Affirmed and Majority and Concurring Opinions filed July 31, 2003









Affirmed and Majority and Concurring Opinions filed
July 31, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00955-CV

NO. 14-02-00956-CV

____________

 

NATHAN DALE CAMPBELL,
Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 



 

On
Appeal from the 180th District Court

Harris County, Texas

Trial
Court Cause Nos. 727,765 and 729,925

 



 

M
A J O R I T Y   O P I N I O N








This
is an appeal from an order submitting Nathan Dale Campbell (appellant) to the
care of Kerrville State Hospital for extended mental health services.[1]  For five years, appellant has been a patient
of a state mental hospital as a result of a violent crime he committed but was
acquitted of by reason of insanity.  This
appeal raises interesting and important issues for patients like appellant who
are ordered to a mental health institution after having committed a violent
crime.  Appellant has filed two briefs
with us, both raising significant legal issues. 
Part of the appeal complains that he was improperly harmed because the
jury heard the details of the brutal crime he committed while insane, and that
those details would distract the jury from the narrow issue before them:  Did his present condition warrant
continued commitment?  A second part of
his brief complains about numerous extraneous offenses discussed in his medical
history that were made known to the jury without any separate proof that they
actually occurred.  The other main
complaint relates to the charge, and raises the equally important question
whether a judge in this type of case can order a patient to an extended stay in
a mental health institution without a jury finding supporting the order.

Specifically,
appellant complains of the following in his original brief:  (1) telling the jury the details of the crime
he committed while insane; (2) introducing extraneous criminal offenses without
affording appellant notice of, discovery on, or an opportunity to defend
against, the alleged offenses; (3) letting the State relitigate the extraneous
offenses when they were barred by collateral estoppel; (4) telling the jury it
would decide if appellant would be ordered to extended inpatient or outpatient
treatment; and (5) not allowing the jury to answer the questions on both
inpatient and outpatient treatment.  In a
supplemental brief, appellant argues that the evidence was legally insufficient
to support the jury=s verdict because the State was required to, but did not, prove
he had served at least sixty consecutive days in a mental hospital under a
valid court order.  As we explain below,
we overrule all of appellant=s issues and we affirm.








A.      FACTS

In
April 1997, at the close of a bench trial before the 180th District Court, the
trial court found appellant Anot guilty by reason of insanity@ of the offenses of aggravated assault and aggravated
kidnapping of his former girlfriend. 
Pursuant to section 46.03 of the Texas Code of Criminal Procedure,
appellant was automatically committed to a mental health facility for twelve
months.  Appellant, diagnosed with
bipolar disorder, has been in a psychiatric facility since that time.  Each year, in May, the trial court has
reviewed the commitment in a jury trial, and continued it.  Appellant has appealed his recommitment three
previous times.  See Campbell v. State,
2000 WL 675142 (Tex. App._Houston
[14th Dist.] May 25, 2000, pet. denied) (not designated for publication); Campbell
v. State, 68 S.W.3d 747 (Tex. App.CHouston [14th Dist.]
2001), aff=d, 85 S.W.3d 176
(Tex. 2002); Campbell v. State, 2002 WL 534131 (Tex. App.CHouston [14th Dist.] April 11, 2002, no pet.) (motion to publish granted).

In
May of 2002, a jury found that appellant was mentally ill and that, as a result
of his mental illness, he was suffering severe and abnormal mental, emotional,
or physical distress, and his mental and physical ability to function
independently had substantially deteriorated. 
The jury also found appellant incapable of making a rational decision
regarding treatment, and found that his condition was expected to continue for
more than ninety days.  The jury refused
to find that appellant was likely to cause serious harm to himself or
others.  On May 31, 2002, the trial court
ordered appellant committed to extended inpatient mental health services twelve
months.  This appeal followed.

B.      DISCUSSION OF EVIDENTIARY ISSUES

1.       Admission of Details of Original 1996
Aggravated Assault and Aggravated Kidnapping.

 








Appellant
first claims that the details of the 1996 aggravated assault and aggravated
kidnapping of his girlfriend should be inadmissible in the annual recommitment
hearings.  He gives four reasons for
this:  it violates (1) double jeopardy
and (2) collateral estoppel, and is (3) irrelevant and (4) unfairly
prejudicial.  We disagree on all issues.

a.       Double jeopardy.

Each
year at Appellant=s recommitment hearing, the State has introduced evidence of
the original 1996 aggravated kidnapping and assault.  Appellant claims that this continual
rehashing of the gruesome details of his 1996 offenses amounts to successive
prosecutions, thus violating his right to be free from double jeopardy.  

The
Fifth Amendment to the United States Constitution provides that no person shall
Abe
subject for the same offense to be twice put in jeopardy of life or limb.@  U.S. Const.
amend. V.  This fundamental doctrine has
been interpreted to prevent (1) a second prosecution for the same offense after
acquittal, (2) a second prosecution for the same offense after conviction, and
(3) multiple punishments for the same offense. 
North Carolina v. Pearce, 395 US. 711, 717 (1969); Bailey v.
State, 87 S.W.3d 122, 126 (Tex. Crim. App. 2002).  However, the doctrine is not implicated in
this case because, as we explain below, the State is not repeatedly prosecuting
appellant or seeking to impose a punishment on him. 








The
lynchpin to our decision is our conclusion that recommitment hearings, and the
judgment following the hearings, are neither a criminal prosecution nor a
punishment.  To begin with, a commitment
under Article 46.03 is a civil matter.  See
Campbell v. State, 85 S.W.3d 176, 180 (Tex. 2002).  Each year, the trial court conducts a hearing
to determine whether appellant Acontinues to meet the criteria for involuntary commitment.@  Tex.
Code Crim. Proc. Ann. art. 46.03, ' 4(d)(5) (Vernon Supp. 2002). 
The court can only recommit appellant if it finds that he meets one of
the criteria for commitment specified in Mental Health Code section
574.035.  See Tex. Health & Safety Code Ann. '
574.035 (Vernon Supp. 2002).  These
criteria relate to appellant=s present dangerousness_both to himself and others_and to appellant=s present mental condition.  See id.  The criteria do not require the jury to
revisit the original crime to decide one more time if appellant should be
committed because of his prior violent acts. 
When the jury revisits his original crimes, the crimes are used as
additional background information to assess appellant=s
improvement; we explain this point in more detail below under his other
issues.  Thus, a recommitment order is
based  on factors that measure the
patient=s
currentCas
opposed to pastCmental condition, not on an additional adjudication of the
original offense.  And, as stated
earlier, the proceeding is civil.  Campbell
v. State, 85 S.W.3d at 180.

But
the civil nature of the proceeding can be overcome by a showing that the
involuntary commitment is punitive or retaliatory in nature.  Appellant has not shown this.  While the patient is physically restrained,
historically these commitments have been treated as civil, rather than
punitive, in nature.  See Beasely v.
Molett, 95 S.W.3d 590, 607 (Tex. App._Beaumont 2002, pet. stricken) (finding commitment under Texas
Civil Commitment of Sexually Violent Predators Act not punitive).  Through Article 46.03, our legislature chose
to have mentally-ill persons treated at a psychiatric facility to reduce their
dangerousness and to improve their mental condition.  See Jones v. United States, 463 U.S.
354, 368 (1983) (AThe purpose of commitment following an insanity acquittal . . .
is to treat the individual=s mental illness and protect him and society from his potential
dangerousness.@).  Appellant has failed
to demonstrate that we should ignore precedent, legislative history, and
reality, and hold that this legislative scheme is actually punitive or
retaliatory.  See Campbell, 85
S.W.3d at 180; Beasely, 95 S.W.3d at 607. 








Additionally,
the recurring nature of the hearing and the annual reference to the original
assault and kidnapping do not transform the hearing from a civil one to a
punitive or retaliatory one.  As we
mentioned above and explain more specifically under one of appellant=s
later issues, the original assault and kidnapping, as well as all of appellant=s
prior history, provide a benchmark to gauge his behavioral, emotional, and
psychological progress or decline.  It is
this historical psychological benchmark that provides a basis for his
psychologists and psychiatrists to assess current behaviorChas
the patient improved or is he merely repeating past behavior?  For example, every one of the doctors
reviewing appellant started with a history of his behavior.  Not one of them looked at current behavior or
to the future without first looking backwardCto his emotional and psychological past.

While
we agree that review of appellant=s brutal crime potentially prejudices the jury to some degree,
and that it must not unduly prejudice the jury against him, it does not amount
to double jeopardy.

b.       Collateral estoppel.

We
turn next to appellant=s claim that collateral estoppel bars the repeated introduction
of the details of his 1996 offenses. 
Like double jeopardy, the doctrine of collateral estoppel is embodied
within the constitutional right not to be placed in jeopardy more than once for
the same crime.  See Ashe v. Swenson,
397 U.S. 436, 443 (1970); State v. Sauceda, 980 S.W.2d 642, 645 (Tex. Crim. App. 1998).  Under this
doctrine, A>when
an issue of ultimate fact has once been determined by a valid and final
judgment, that issue cannot again be litigated between the same parties in any
future lawsuit.=@  Sauceda, 980 S.W.2d at 645 (quoting Ashe,
397 U.S. at 443).  To determine whether
collateral estoppel bars part or all of a subsequent prosecution, courts employ
a two-step analysis in which they ask the following: (1) what facts were Anecessarily
decided@
in the first proceeding; and (2) do those Anecessarily decided@ facts constitute essential elements of the offense in the
second trial.  See Ex parte Taylor,
101 S.W.3d 434, 440 (Tex. Crim. App. 2002) (en banc).  The entire trial record must be examined to
determine precisely what fact, or combination of facts, the jury necessarily
decided.  See id. at 441.

Appellant
does not identify the specific fact or facts he believes the State is
attempting to relitigate, and he does not explain how any facts constitute
essential elements of the Aoffense in the second trial.@  Appellant also has
offered no authority that collateral estoppel applies to subsequent
recommitment hearings to bar the details of the patient=s
original crime.  We decline to hold that
collateral estoppel applies here.








c.       Relevance.

Next,
appellant contends that his actions, while criminally insane, are not relevant
to the findings required under section 574.035 of the Mental Health Code, and
that their admission is unfairly prejudicial. 
See Tex. R. Evid. 402,
403.  He argues that throughout the
hearing the State purposefully emphasized the brutal nature of his crimes to
inflame the jury against him and to assure his return to inpatient, rather than
outpatient, treatment.  We review a trial
court=s
decision to admit or exclude evidence for abuse of discretion.  See City of Brownsville v. Alvarado, 897
S.W.2d 750, 753 (Tex. 1995).  But, before
we consider if appellant=s criminal acts are relevant to the recommitment hearing, we
think it important to revisit what the State must prove to support
recommitment.

Section
574.035(a) provides that a judge may order a proposed patient to receive
court-ordered extended inpatient mental health services if the jury finds clear
and convincing evidence of the following: 


(1)       the
proposed patient is mentally ill;

(2)       as
a result of that mental illness the proposed patient:

(A)
is likely to cause serious harm to himself;

(B)
is likely to cause serious harm to others; or

(C)
is:

(i)
suffering severe and abnormal mental, emotional, or physical distress;

(ii)
experiencing substantial mental or physical deterioration of the proposed
patient=s ability to
function independently, which is exhibited by the proposed patient=s
inability, except for reasons of indigence, to provide for the proposed patient=s
basic needs, including food, clothing, health, or safety;  and

(iii)
unable to make a rational and informed decision as to whether or not to submit
to treatment;

(3)       
the proposed patient=s condition is
expected to continue for more than 90 days; and








(4)       the proposed patient has received court‑ordered
inpatient mental health services under this subtitle or under Article 46.02,
Code of Criminal Procedure, for at least 60 consecutive days during the
preceding 12 months.

Tex. Health & Safety Code Ann.
'
574.035(a).[2]  

To
be clear and convincing under subsection (a), the evidence must include expert
testimony and evidence of a recent overt act or a continuing pattern of
behavior that tends to confirm (1) the likelihood of serious harm to the
proposed patient or others, or (2) the proposed patient=s
distress and the deterioration of the proposed patient=s
ability to function.  See Tex. Health & Safety Code Ann. '
574.035(c).  Evidence is relevant if it
has Aany
tendency to make any fact that is of consequence to the determination of the
action more probable or less probable than it would be without the evidence.@  Tex.
R. Evid. 401.  We disagree with
appellant that his prior violent acts are not relevant to the jury=s
assessment of the section 574.035 factors. 


The
state of an individual=s emotional and psychological well-beingCor
lack thereofCand whether the person should remain committed because of a
mental illness, requires more than a snapshot of a single year in a person=s
life; it is a broad inquiry.  In an
involuntary commitment case, we ask whether the person is mentally ill and
needs help (1) to protect himself or others or (2) to maintain his health.  Especially when a person was criminally
violent while insane and has been committed for years, focusing only on
the most recent years of life provides no frame of reference.  To determine if one who has been mentally ill
is now well, or at least able to protect others and maintain his health, a
psychological history is necessary.








As
we noted earlier, the original assault and kidnapping provide a benchmark by
which expertsCand therefore the juryCcan measure appellant=s emotional and psychological progress.  Without first looking at appellant=s
psychological history, the experts cannot fully assess his current
psychological status.  According to at
least one expert, appellant=s prior violent acts reflect how he can react to his illnessCbipolar
disorderCwhen
he is not using various tools, such as medication and counseling, to control
the illness.  And, according to
testimony, the details of the crime allow the doctors and the jury to assess
whether appellant was adequately processing the event and has accepted
responsibility for it.  Without some
reference to the details of the crime, and which of them appellant still was
denying, it would be difficult for the doctors to discuss adequately whether
appellant improved over the year. 
Otherwise, the jury would have to rely on the doctor=s
testimony that appellant denied certain aspects of the crime.  Moreover, the crime apparently indicates the
extent to which appellant can be a danger to others if he does not control his
mental illness.  Every psychological
evaluation introduced into evidence contained a summary of appellant=s
1996 offenses and the fact that he had, at a minimum, assaulted his girlfriend
and attempted to pull her eyes out of their sockets.  Even the psychological assessment offered by
appellant indicated that he had Aassaulted his girlfriend in July 1996 and attempted to remove
her eyes.@[3] 

At
trial, some experts testified that appellant continued to deny important
particulars of his crime; for example, appellant has denied that he committed
the crime with a knife.  To some experts,
this was important.[4]








We
find this evidence relevant to the jury=s sole function at the trial, which was to decide if appellant
was mentally ill and met the criteria for court-ordered extended mental health
services.

d.       Inadmissible because unfairly
prejudicial?

Having
determined the evidence was relevant, we must now consider whether it should be
excluded because it was unfairly prejudicial. 
Under Rule 403, relevant evidence may be excluded if its probative value
is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury.  Tex. R. Evid. 403.  When a party objects under Rule 403, a trial
court must conduct a balancing test, weighing the danger of prejudice against
the probative value of the evidence.  Waldrep
v. Tex. Employers Ins. Ass=n, 21 S.W.3d
692, 703 (Tex. App.CAustin 2000, pet. denied). 
In doing so, we must review the entire record.  See Alvarado, 879 S.W.2d at
754.  To obtain a reversal because of
admitted evidence, the appellant must demonstrate that the whole case turns on
the particular evidence admitted.  Id.
at 753B54.


Here,
appellant again complains the State emphasized the gruesome details of his
offenses and repeatedly implored the jury to consider which was more importantCappellant=s
rights or society=s right to be protected from him.[5]  As a consequence, appellant argues, the jury
was unfairly prejudiced against him and gave the State the result it
wanted.  We disagree. 








As
a threshold matter, the State argues that appellant waived this complaint by
introducing his own evidence[6]
containing many of the very same details of which he now complains.  See Ethington v. State, 819 S.W.2d
854, 858B60
(Tex. Crim. App. 1991); McInnes v. Yamaha Motor Corp., U.S.A., 673
S.W.2d 185, 188 (Tex. 1984).  We
agree.  But even if appellant had not
waived this complaint, he would still fail the Rule 403 balancing test.  As stated earlier, all of the evidence of
appellant=s crime was highly relevant to the issues of his dangerousness
to himself or others, his mental status, and his treatment progress.  And any risk of unfair prejudice must be
measured against this high degree of relevance. 


To
examine any prejudicial effect the evidence had on the jury, we need not look
any further than the jury=s response to the jury questions.  Before answering these questions, the jury
heard extensive expert testimony about appellant=s mental state, and heard and saw written evidence detailing
the crime.  The jury also heard at least
one psychologist testify that appellant was not a threat to himself or others
while he remained in the controlled environment of Kerrville State Hospital,
where he was taking his medication and being carefully monitored.  However, that same psychologist doubted
whether appellant would continue to improve if he were placed in an outpatient
treatment program, because too many outside variables would create tension and
uncertainty that would probably cause appellant=s mental state to deteriorate.  









The
jury=s
response to this testimony, and all the evidence, clearly shows that it
was not unfairly prejudiced against the defendant.  Unfair prejudice means an Aundue
tendency to suggest decision on an improper basis, commonly, though not
necessarily, an emotional one.@ Montgomery v. State, 810 S.W.2d 372, 378 (Tex. Crim.
App. 1990) (quoting United States v. Jamil, 707 F.2d 638, 644B645
(2nd Cir. 1983)); Fed. R. Evid.
403 advisory committee=s note.  Here, however,
it is apparent that the jury was able to render a verdict based upon expert
testimony and by considering all of the circumstances of appellant=s
mental health.  The jury=s
answers to the special issuesCespecially its conclusion that appellant was not a danger to
himself or othersCreflects a jury that listened to all of the testimony and
responded in a reasonable manner consistent with that testimony.  It is exactly this objectivity that refutes
the claim that the jury was inflamed and that it rendered a verdict on an
improper basis. 

Given
the high degree of relevance, as well as little evidence of prejudicial effect,
appellant has failed to show that the probative value of the details was
substantially outweighed by any prejudicial effect.  

In
short, we conclude that none of appellant=s complaintsCdouble jeopardy, collateral estoppel, relevance, and unfair
prejudiceCare reason to exclude evidence of appellant=s
crimes in July of 1996.  We overrule
appellant=s first issue.

2.       Admission of Extraneous Offenses.

In
his second issue, appellant contends the trial court erred by improperly
allowing the State to Ashow allegations of many extraneous criminal offenses allegedly
having been committed by appellant without the necessity of proving the same by
any legal standard@ and denying appellant Anotice of said extraneous offenses or the ability to defend
against the same either before or during trial by denying all efforts at
discovery.@  Appellant=s
arguments in this section are somewhat disjointed and difficult to follow;
however, we will address his arguments as we understand them.  








Appellant
primarily argues that he was deprived of a fair trial because he was unable to
prepare for, or defend against, the introduction of extraneous acts or offenses
reflected in his medical records.[7]
 Most
of appellant=s complaints are directed to State=s
Exhibit 25, a 2002 psychiatric assessment prepared by Dr. Suire, and testimony
relating to it.  Dr. Suire=s
assessment included the following in a summary of appellant=s
background:

Mr. Campbell has one prior arrest, for drug possession at age
15.  Records indicate this arrest
resulted in he and his mother being ordered to attend substance abuse education.  File information also indicates a pattern of
antisocial behavior that did not lead to arrest, including theft, drunk
driving, and drug trafficking. _

Dr. Suire=s
assessment also included a reference to an incident in which a Ms. Brubaker
observed appellant standing near a group of patients who were smoking in
violation of hospital policy, and concluded that appellant Aappeared
to be serving as a lookout for these patients.@  Appellant also complains about the admission
of his own testimony, elicited by the State, regarding his past substance abuse
and sexual activity with women while confined
in a psychiatric facility.[8]








Appellant
complains that the trial court and the State either denied or ignored his
discovery requests.  And, as a result, he
was unable to investigate and defend against these alleged extraneous acts.[9]  For example, appellant contends that the
State should have been required to put on evidence to prove that he was
arrested at age 15 for drug possession, and that he should have been given
notice of this specific allegation and an opportunity to disprove it through
discovery.  Appellant does not raise
specific evidentiary complaints about the admitted evidence, but argues broadly
that the State was allowed to portray him as Aa drug trafficker, a drunk driver, a drug possessor, and
conspirator in other crimes, [and] a criminal thinker@
without being required to prove the allegations by some legal standard; he
claims this deprived him of due process. 
However, he provides no authority, nor are we aware of any, to support
his assertion that historical or background information drawn from medical
records is admissible only when proven by some legal standard.  Even if we were to assume the trial court
erred in admitting the referenced evidence, appellant has not demonstrated that
the errors were of such magnitude that he was denied a fair hearing or that
they probably caused the court to render an improper judgment.  See Tex.
R. App. P. 44.1(a).[10]


We
overrule appellant=s second issue.

3.       Extraneous Offenses and Collateral
Estoppel.

In
his third issue, appellant contends that collateral estoppel bars evidence of
extraneous offenses.  Appellant argues,
as he did in his first two issues, that his present mental condition should be
the only basis of his evaluation each and every year.  He contends that requiring him to relitigate
his past acts violates the principles of collateral estoppel.  However, as in his first issue, appellant
wholly fails to apply the doctrine of collateral estoppel to the facts of his
case.  He does not identify specific
extraneous acts necessarily decided in earlier proceedings, he does not show
that those acts constitute essential elements of the jury=s
findings, and he does not provide a record of any prior proceedings from which
we could determine what fact or facts were foreclosed from the jury=s
consideration.  See Ex parte
Taylor, 101 S.W.3d at 440-441. 
Therefore, we overrule this issue.








C.      DISCUSSION OF CHARGE ISSUES

1.       Informing the Jury of the Effect of its
Answers.

We
turn now to appellant=s charge issues.  In his
fourth issue, he contends that the jury should not have been told that it was
deciding whether appellant would be ordered to inpatient or outpatient
treatment.  He claims that this error was
made worse because the jury also knew which question in the charge related to
which type of treatment.








The
special issues in the charge contained a question on inpatient treatment
(section 574.035(a)), and on outpatient treatment (section 574.035(b)), and the
prosecutor explained to the jury that one question related to inpatient
treatment and the other to outpatient treatment.[11]  Consequently, the jury knew which special
issue inquired about inpatient treatment and which inquired about outpatient
treatment.  Appellant claims this was
reversible error. In support of his argument, appellant cites to Mental Health
Code section 574.032(f), which states in part that A[t]he
jury may not make a finding about the type of services to be provided to the
proposed patient.@  Tex. Health & Safety Code Ann. '
574.032(f) (Vernon Supp. 2002).[12]  

Appellant
did, however, himself introduce the statutory provisions in a separate
document, even though he had consistently claimed the jury should not know the
effects of its answers.  The record does
not reveal why appellant=s attorney introduced this document into evidence; he gave no
reason at the time.  As he objected
throughout trial, we are reluctant to say that he waived the issue by
introducing one document.  However, it
was introduced and it was available to the jury in the deliberation room, and
it did tell the jury which special issue was for outpatient and which was for
inpatient treatment.  For this reason, we
conclude that he waived any potential error on this issue. 

We
overrule appellant=s fourth issue.

2.       Conditioning
the Answer to Outpatient Treatment on a Positive Response to the Inpatient
Treatment 

 

In
appellant=s fifth issue, he argues the trial court should have let the
jury answer the questions on both outpatient (section 574.035(b)) and inpatient
(section 574.035(a)) treatment.  The
court did not do this.  Instead, the jury
was instructed to answer the question on outpatient treatment only if it found
that appellant did not meet the requirements for inpatient treatment.  Appellant claims that he had a right to have
the jury answer both the inpatient and outpatient jury questions; he claims the
judge could order outpatient treatment only if the jury made findings on this
issue.  As support for his argument,
appellant relies on several sections of the Mental Health Code.  








In
response, the State claims the jury did not have to consider both inpatient and
outpatient treatment for the trial court to order one or the other.  According to the State, the judge had the
discretion to order outpatient treatment even if the jury did not answer a
question on outpatient treatment.  The
State relies solely on article 46.03.  

As
presented by appellant, this issue really has two parts.  First, in a jury trial, can the trial court
order either inpatient or outpatient treatment without a jury finding?  Second, was it error for the trial court to
limit her options and obtain a jury finding on outpatient treatment?

a.       In
a jury trial, can the judge order either type of treatment without a jury
finding?

 

We
first consider whether, after a jury trial, the trial court could order a
treatment without a jury finding on that type of treatment.  The Texas Supreme Court=s
2002 Campbell opinion guides our inquiry.  There, the question was whether the trial
judge could hold a hearing if it did not have two medical certificates on file
stating that Campbell should remain in inpatient care.  The Mental Health Code provides that two
certificates are needed; article 46.03 states that a trial judge can hold a
hearing on its own motion.  The Supreme
Court began by discussing the relationship between article 46.03 and the Mental
Health Code.  The Court first pointed out
that Athe
proceedings described in article 46.03 section 4(d)(5) determine whether a
person should be released from involuntary commitment.@  Campbell, 85 S.W.3d at 181.  AThey apply to a person who has been found not guilty by reason
of insanity in the trial of a criminal offense and the court determines that
the [person] committed an act, attempt or threat of serious bodily injury to
another person.@  Id.  The Court noted that Campbell met those
criteria, and that article 46.03 applied to his case.








However,
the Court also explained that article 46.03, section 4(d)(5) was not the only
provision a court must look to when it holds a hearing to determine whether to
release or recommit a person acquitted under article 46.03 of inflicting
serious bodily injury on another person. 
The Court emphasized that article 46.03, section 4(d)(5) provides that a
hearing under the section must be conducted pursuant to the Mental Health Code=s
provisions.  Id.  As the Mental Health Code is very broad
and contains provisions that would not apply to an article 46.03, section
4(d)(5) hearing, the Court held that Aonly those Mental Health Code provisions pertinent to an
article 46.03 section 4(d)(5) proceeding apply.@ Id. at 182. Ultimately, the Court concluded that Aa
hearing held under article 46.03 section 4(d)(5) must comply with those Mental
Health Code provisions pertinent to conducting commitment hearings.@  Id. at 183 (emphasis in original).

Here,
then, the question is which Mental Health Code provisions are pertinent to
conducting commitment hearings.  The
parties generally agree that three sections of the Mental Health Code are
pertinent: section 574.032, entitled ARight to Jury@; section 574.035, entitled AOrder for Extended Mental Health Services@;
and 574.036, entitled AOrder of Care or Commitment.@  We agree and, when we
look at these sections, we find that each one contains very clear and specific
directions that an order for either inpatient or outpatient commitment must be
supported by jury findings.  

Section
574.032 states that a hearing for extended mental health servicesCthe
type of hearing held hereCAmust
be before a jury,@ unless that right is waived. 
See Tex. Health &
Safety Code Ann. ' 574.032(b).  This
section also provides, AIn a hearing before a jury, the jury shall determine if the
proposed patient is mentally ill and meets the criteria for court-ordered
mental health services.@ Id. at 574.032(f).

Section
574.035 contains the criteria that must be met before an individual is ordered
to extended inpatient or extended outpatient mental health services.  Before a judge may order a proposed patient
to receive either of these types of mental health services, the jury must find
that the proposed patient meets the criteria for inpatient and/or outpatient
mental health services.  See Tex. Health & Safety Code Ann. '
574.035.








Finally,
section 574.036 details what must happen after the judge dismisses the jury,
and before the judge may enter an order committing the individual to either
inpatient or outpatient mental health services. 
The judge may hear additional evidence as to Aalternative
settings for care,@ but before the judge can enter an order committing the
individual to inpatient or outpatient treatment, the juryCthe
Atrier
of fact@
as the section refers to itCmust find that the individual meets the criteria for that type
of extended mental health services.  See
Tex. Health & Safety Code Ann.
'
574.036.

Thus,
in three separate provisions pertinent to conducting an article 46.03, section
4(d)(5) hearing, the Mental Health Code provides for the jury, not the
judge, to decide if the patient meets the criteria for extended mental health
services.  And in two separate sections,
the Code provides that the jury must make this finding before the court can
order extended inpatient or outpatient mental health services.

As
such, each of these sections of the Mental Health Code directs how the court
should conduct the hearing.  First, the
court must conduct the hearing with a jury, unless one is waived, and second,
the jury must enter findings that the inpatient and/or outpatient treatment
criteria have been met.

In
spite of the language in these sections, the State claims article 46.03 of the
Code of Criminal Procedure authorizes the court to order inpatient or
outpatient treatment as long as the jury has made a positive finding for inpatient
treatment.[13]  The three relevant Mental Health Code
sections do not support this argument. 
Consequently, we agree with appellant that the appropriate reading of
article 46.03 and the Mental Health Code is this:  once the jury has found that a patient meets
the criteria for inpatient and outpatient treatment, the judge has the
discretion to choose between the two, or, if the jury has made a finding of one
of the two, the judge may order that treatment. 









Thus,
we also agree with appellant=s claim that the trial judge, by conditioning the jury question
on outpatient treatment, ran the risk of limiting her options.  We do not agree, however, that this was
error. 

b.       Did the trial court commit reversible
error by limiting her options?

Here,
the trial court did potentially limit itself only to inpatient treatment; the
jury was told not to consider the outpatient question if it answered the
inpatient treatment question positively. 
But this does not mean the charge was flawed.  We think appellant=s
argument relies on a faulty assumptionCthat the judge has no input into the contents of the charge and
has no discretion at the submission of the charge to limit her options.  To the contrary, the submission of the charge
is the trial court=s responsibility.  Spencer
v. Eagle Star Ins. Co. of America, 876 S.W.2d 154, 158 (Tex. 1994).  If the court has the discretion to choose
between either inpatient or outpatient treatment after the jury has answered
both positively, the court must also have the discretion before submitting the
charge to decide that it (1) will order only inpatient treatment if the jury
answers that question affirmatively and (2) will not consider outpatient
treatment if the jury finds that inpatient treatment is appropriate.  By conditioning the question, that is, in
essence, what the trial judge did here. 
After she had heard all the evidence, but before submitting the charge,
she apparently decided that inpatient treatment was the more advisable
treatment.  The result is the same as if
the jury answered both questions positively; the judge apparently would have
chosen inpatient treatment rather than outpatient treatment.








We
are unwilling to say that the trial judge unwittingly limited herself only to
inpatient treatment.  At the charge
conference, appellant argued very clearly that the judge could not order
outpatient treatment if the jury did not enter a positive finding to that
question.  By choosing to condition the
question, the judge exercised her discretion before submission rather than afterward.  Had she wanted to keep that option open, she
could have.  She chose not to, and that
was within her discretion.  This is both
logical and efficient.  If the trial
judge knew she preferred inpatient treatment, it would be unnecessary and
wasteful requiring the jury to consider both options.

In
summary, we agree with appellant that the judge cannot order inpatient or
outpatient treatment unless the jury first enters a positive finding to those
issues.  But, here, even though the trial
judge did ultimately limit her options, she committed no error in the
submission of the charge. 

We
overrule appellant=s fifth issue.

3.  The Reversal and Remand of the 2001
Commitment Order.

In
two supplemental issues on appeal, appellant argues that he should be released
because this Court reversed the 2001 Commitment Order.

Appellant
bases his argument on three sections contained in the Health & Safety
Code.  Two of the sectionsC574.035(a)(4)
and 574.035(b)(2)(F), which pertain to court-ordered inpatient and outpatient
mental health servicesCrequire the judge or jury to find from clear and convincing
evidence that the defendant has received court-ordered patient services for at
least 60 consecutive days during the preceding twelve months.  The third section states that the jury or
judge need not make the finding required by these two sections if the defendant
has already been subject to an order for extended mental health services.  See Tex.
Health & Safety Code Ann. ' 574.035(b)(2)(F).  Thus,
the first two sections require a finding by the factfinder that the person has
received court-ordered mental health services; the third section does away with
this requirement if the defendant has already been subject to an order for
extended mental health services.  

Appellant
contends that when we reversed the 2001 commitment order, there was no Avalid@
commitment order in effect.  Without a
valid commitment order, the State would have to prove that appellant received
court-ordered mental health services for at least 60 consecutive days during
the previous year.  As the State did not
prove this, it did not meet its burdenCaccording to appellantCand the order must be reversed.








Appellant
also cites one of our cases in which we equated a reversal to the granting a
new trial.  See Al Haj v. State,
916 S.W.2d 660 (Tex. App.CHouston [14th Dist.] 1996), pet. dism=d, 932 S.W.2d 519 (Tex. 1996). 
There we said the following about the effect of a reversal:

In
effect, the granting of a new trial restored appellant=s
case to its status before the Y
trial, including arraignment or any pretrial proceedings initiated by appellant
or the State.

 

Id. at 663.

Using
this language as a springboard, he argues that a reversal here would put the
case in the position it was in before the 2001 order, wiping out both the order
and his subsequent stay at the hospital, as if neither happened.  As a corollary, he also argues that having
been reversed, the 2001 commitment order is invalid or void and that appellant
should be released.  We disagree with
this interpretation.  Instead, we think Roland
v. State, 973 S.W.2d 665 (Tex. 1998), explains what happens in this
situation.

In
Roland, the Texas Supreme Court was confronted with an individual who,
like appellant, was adjudicated not guilty of a violent crime by reason of
insanity.  Id. at 665B666.  Like appellant, Roland claimed there was a
break in the chain of commitment orders because there literally was a breakCa
commitment order expired before the next commitment order was extended.  Id. at 666.  He claimed this break between commitment
orders required his immediate release, and apparently raised the specter of due
process violations if he was not released.[14]  The Supreme Court disagreed.








First
it noted that, although the statute is mandatory and requires the hearing on
recommitment to be held before the prior order expires, Athe
statute does not prescribe the consequences of a failure to hold a timely
hearing.@  Id. 
Then it pointed out that nothing in article 46.03 justifies denying the
State the opportunity to prove that Roland continued to be mentally ill and
dangerousCeven when the statutory time for hearing has passed.  Id. at 666B667.  And finally, it discussed the legislative
purpose of the section.  Clearly, that
purpose was for the judiciary Ato be involved in the decision to terminate the commitment of a
person found not guilty of a violent offense by reason of insanity.@  Id. at 667.  Article 46.03, section 4(d)(5), entitled AJudicial
Release,@
clearly requires that discharge may occur only Aby order of the committing court in accordance with the procedures specified in this
subsection.@  Id. (emphasis in
original).  Unquestionably, the
legislature did not want a person found not guilty by reason of insanity to be
released, unless the release was first reviewed by the committing court.  Id. 


The
Roland reasoning applies here, too. 
If the legislature wanted a patient to be released because their order
was reversed, it could have stated this. 
It did not.  Instead, it provided
that only the committing court can order the discharge of a person found not
guilty by reason of insanity.  And, even
then, the court can order a discharge only if it follows procedures set out in
article 46.03, section (4)(d)(5). 
Releasing a person merely because their commitment order was reversed,
and not because the trial court ordered the patient dismissed, does not further
the plainly stated legislative intent.

Thus,
reading article 46.03 of the Texas Code of Criminal Procedure and section
574.035(a) together, it is clear that a patient may be discharged only because
the trial judge affirmatively made the decision to discharge and followed
certain procedures.

For
these reasons, we overrule appellant=s two supplemental points.[15]








                                                               CONCLUSION

We
have reviewed each of appellant=s claims, and we briefly summarize our holdings here.  First, by admitting the details of appellant=s
original crimes, the trial court has not subjected appellant to double
jeopardy.  Second, collateral estoppel
does not apply to this case to preclude the admission of evidence about prior
crimes.  Third, the details of the crime
were relevant to the proceeding and not unfairly prejudicial.  Fourth, appellant claimed that the State had
to prove any extraneous offenses contained in historical summaries by some
legal standard.  But, he did not cite any
authority in support of this, nor did he demonstrate that any potential error
in admitting the offenses probably caused the rendition of an improper
judgment.  Fifth, on the charge issues,
appellant did not preserve any error that may have occurred when the jury was
told that one special issue inquired about inpatient treatment and the other
inquired about outpatient treatment. 
Sixth, the trial court did not err in conditioning the jury=s
consideration of outpatient treatment. 
As long as the trial court=s order is supported by a jury finding, the trial court may
choose between inpatient or outpatient treatment.  Here, although the jury did not enter a
finding on outpatient treatment, it did find that inpatient treatment was
appropriate, and that finding supported the Court=s order.  Finally, our
reversal of the 2001 order did not render it void so that the State would be
required to prove his commitment for 60 days prior to the 2002 order.

For
these reasons, we affirm the trial court=s judgment.

 

 

 

/s/        Wanda McKee Fowler

Justice

 

Judgment
rendered and Majority and Concurring Opinions filed July 31, 2003.

Panel consists of Chief Justice Brister
and Justices Fowler and Murphy.[16]  (Brister, C.J., concurring).











[1]  Before this
opinion issued, the trial court held its annual review of Campbell=s commitment and, based on his behavior and
assessments from May 2002 to May 2003, decided to order Campbell to outpatient
treatment.  As a result, we asked the
parties if the issues in this appeal were moot. 
Both parties relied on an earlier opinion involving Campbell to argue that
the issue was not moot.  See Campbell
v. State, 68 S.W.3d 747, 752B54 (Tex.
App.CHouston [14th Dist.] 2001), aff=d, 85 S.W.3d
176 (Tex. 2002).  We agree.





[2]  The jury is
not required to make the finding under subsection (a)(4) if the proposed
patient has already been subject to an order for extended mental health
services.  See Tex. Health & Safety Code Ann.
' 574.035(d).





[3]  The evaluation
also included the following details in a separate section:  

 

Mr.
Campbell stated that he was in a relationship with his girlfriend for about one
and a half years.  According to Mr.
Campbell, the day of the assault, he heard his father=s next door neighbor=s voice
telling him to kill his girlfriend.  Mr.
Campbell stated that he remembers choking her, because it was really a demon he
was killing.  Mr. Campbell stated that as
her face turned blue, her eyes began to bulge, which he thought was the
location of the demon, so he attempted to gouge out her eyes. 





[4]  Appellant
disputes the proposition that, if he denies the particulars of the crime, he
has not improved.  To support this
argument, he points to at least one expert=s
testimony that a person might not remember all that he did during a psychotic
episode.  However, appellant was able to
cross-examine the experts on this issue, so that the jury had before it the
reasons in support of, and the reasons against, this theory.  It was their responsibility to weigh the
testimony and reach a decision.





[5]  Appellant=s objections to the State=s argument that the jury should weigh appellant=s rights against society=s right
to protection were frequently sustained in whole or in part.  Near the conclusion of the proceeding,
appellant=s counsel requested a mistrial, but the court denied
it. 





[6]  As noted in
the previous section, appellant introduced a document containing virtually all
the details of which he now complainsCwith the
exception of the fact that a knife was used in the assault.  The State argues, and we agree, that the
inflammatory potential of the fact that a knife was used is relatively
minimal compared to the graphic nature of the crime itself. 





[7]  Appellant also
argues, in a conclusory fashion, that the introduction of background
information that may relate to his personality disorder is confusing and
prejudicial, and is not relevant to the issue of whether he is currently
mentally ill.  Appellant argues that he
may not be committed because he has a personality disorder that makes him
dangerous, citing Foucha v. Louisiana, 504 U.S. 71, 77 (1992)
(holding  Louisiana statute violated due
process because it allowed insanity acquittee to be committed to a mental
institution until he was able to demonstrate he was not dangerous to himself
and others, even though he did not suffer from any mental illness).  He also contends that all the testifying
doctors stated that appellant=s mental illness was in remission.  By this argument, appellant appears to
suggest that the jury=s findings were based on the existence of a
personality disorder rather than a mental illness.  But appellant does not support this argument
with citations to the record or appropriate legal analysis, and he does not contend
that the evidence was legally or factually insufficient to support the jury=s findings. 
Therefore, to the extent appellant is making such an argument, it is
waived.





[8]  Although
appellant complains that he objected to the admission of four of the
psychological assessments introduced by the State, and contends that Athese documents were then offered and testified to in
front of the jury on many occasions,@ he does
not identify any other specific extraneous acts contained in the assessments
and provides no citations to any supporting testimony.  Therefore, appellant has waived any complaint
as to other unidentified extraneous acts or testimony regarding them.





[9]  Appellant=s discovery requests included two
requests to depose witnesses, a request to obtain the notice and disclosures
provided in Mental Health Code sections 574.006 and 574.007, a general motion
for discovery, a notice for disclosures under Texas Rules of Evidence 404 and
609, and a request for Brady materials.  Appellant does not argue that
the trial court erred in denying any specific discovery requests, and does not
identify what information he contends he wanted to obtain or how it was
relevant or material.





[10]  We
further note that the extraneous acts of which he complains were presented in
the context of appellant=s treatment and
mental health assessments; they were  not
introduced for the purpose of convicting appellant of charges or enhancing a
sentence upon conviction.  Given the
relevance of the information to the jury=s
determination of appellant=s
mental condition, the trial court could have determined that admission of the
psychological assessments would not deprive appellant of a fair opportunity to
contest the evidence or testimony.





[11]  Under section
574.035(b), the judge may order a proposed patient to receive court‑ordered
extended outpatient mental health services only if:

(1) the judge finds that appropriate mental health
services are available to the patient; and

(2) the jury, or the judge if the right to a jury is
waived, finds from clear and convincing evidence that:           

(A) the proposed patient is mentally ill;

(B) the nature of the mental illness is severe and
persistent;

(C) as a result of the mental illness, the proposed
patient will, if not treated, continue to:

(i) suffer severe and abnormal mental, emotional, or
physical distress; and

(ii) experience deterioration of the ability to
function independently to the extent that the proposed patient will be unable
to live safely in the community without court‑ordered outpatient mental
health services;

(D) the proposed patient has an inability to
participate in outpatient treatment services effectively and voluntarily,
demonstrated by:

(i) any of the proposed
patient's actions occurring within the two‑year period which immediately
precedes the hearing;  or

(ii) specific characteristics
of the proposed patient's clinical condition that make impossible a rational
and informed decision whether to submit to voluntary outpatient treatment;

(E) the proposed patient's condition is expected to
continue for more than 90 days; and

(F) the proposed patient has received court‑ordered
inpatient mental health services under this subtitle or under  Section 5, Article 46.02, Code of Criminal
Procedure, for at least 60 consecutive days during the preceding 12 months.

 

Tex. Health
& Safety Code Ann. ' 574.035(b) (Vernon Supp. 2002).  The jury or judge is not required to make the
finding under subsection (b)(2)(F) if the proposed patient has already been
subject to an order for extended mental health services.  Id.
' 574.035(c).





[12]  Appellant also
cites Shannon v. United States, 512 U.S. 573, 579 (1994), in which the
United States Supreme Court discussed the well-established principle that
juries are not to consider the consequences of their verdicts.  The State responds that appellant has waived
the issue because he introduced a document noting which provision related to
inpatient and which related to outpatient treatment.  

 





[13]  The State
relies on language providing that the court shall order inpatient treatment if
it determines that the acquitted person continues to meet the criteria for
inpatient treatment, and that outpatient treatment is inappropriate.  The State seems to concede that some sort of
finding by the jury is necessary, because it does not argue that the court
could order either inpatient or outpatient treatment without a jury finding,
even though the article does not contain language requiring a jury finding.





[14]  We say that he
Aapparently@ raised
these issues because it is a little unclear from the opinion.  The court discussed why it would not
implicate due process if he were not released, but did not say if it discussed
the issue on its own or because Roland raised it.





[15]  At oral
argument, counsel also argued that he is entitled to have a hearing at the end
of each year he is committed.  If the
order for one year is reversed, he claims that the hearing for that year must
be reheld before the hearing for the next year can occur.  Consequently, when this Court reversed the
2001 order, he claims the trial court could not hold a hearing and enter an
order in 2002 without first retrying the commitment issues for the 2001 order.  This argument was not made in the trial court
or in the appellate brief.  As such, we
do not address it in the opinion; however, we think it raises an important
issue that the legislature should consider addressing.





[16]  Senior Chief
Justice Paul C. Murphy, sitting by assignment.