Candelario **MARROQUIN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–02–00299–CR.[1]

Court of Appeals of Texas,
El Paso.

July 31, 2003.

1. Although this appeal was assigned a criminal designation, as we discuss herein we conclude it was actually a civil proceeding.

J.K. "Rusty" Wall, Law Office of J.K. Rusty Wall, Midland, for appellant.

Al W. Schorre, Jr., District Attorney of Midland County, Midland, for state.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

### OPINION

SUSAN LARSEN, Justice.

Candelario Marroquin appeals an order committing him to a state mental health facility for twelve months. Because the commitment hearing was conducted when only one proper certificate of mental examination for mental illness was on file with the court, we must reverse and remand.

## Factual and Procedural Background

Marroquin was indicted in 1997 for aggravated assault on a police officer. The indictment alleged that Marroquin injured the officer by kicking him. A jury found Marroquin incompetent to stand trial, but further found that there was a substantial probability that he would attain the competency to stand trial within the foreseeable future. In accordance with the jury's verdict, the trial court issued an order committing Marroquin to a state mental health facility for eighteen months. See Tex. Code Crim. Proc. Ann. art. 46.02, §§ 4(g), 5(a) (Vernon 1979 & Supp.2003) (providing that if a jury finds a defendant to be incompetent with a substantial probability of attaining competency in the foreseeable future, the court must commit the defendant to a mental health facility for eighteen months).[2]

In January 1999, the trial court conducted a temporary commitment hearing and again ordered Marroquin to be committed to a state mental health facility, this time for ninety days. The trial court subsequently conducted three more commitment hearings in May of 1999, 2000, and 2001. Each time a jury found Marroquin mentally ill, and each time the court committed Marroquin to a state mental health facility for twelve months. See id. § 6(a), (b)(6) (Vernon Supp.2003) (providing for a twelve-month commitment when a defendant has previously been committed as a result of being found incompetent and the criminal charges have not been dismissed).

On June 12, 2002, the court conducted the commitment hearing from which this appeal arises. The State did not present any live testimony at the hearing; it relied solely upon three exhibits.

State's Exhibit 1 was a report by Dr. Ravi Medi. Dr. Medi noted that Marroquin had previously been delusional; for example, he believed he was Jesus Christ. Dr. Medi noted, "Apparently, without the medications in the past, [Marroquin] has behaved in a bizarre manner talking to himself, having auditory hallucinations, and being out of touch with reality." Marroquin admitted that he hears voices, but he would not disclose what the voices tell him. Dr. Medi concluded Marroquin had "very little insight into his problems" and that he was incompetent to stand trial. Although Dr. Medi believed that Marroquin needed "more aggressive management of his psychotic symptoms," he was also concerned that Marroquin may have been "going back and forth to state hospitals ... and if there is another option to let him get back with his family this needs to be explored."

Attached to Dr. Medi's report was a preprinted form entitled "Physician's Certificate of Medical Examination for Mental Illness," which was completed and sworn to by Dr. Medi on June 5, 2002. In the space for a brief diagnosis, Dr. Medi wrote, "Chronic schizophrenia paranoid type." Dr. Medi checked boxes to reflect findings that Marroquin was mentally ill; was likely to cause serious harm to himself or others; would, if not treated, continue to experience deterioration of his ability to function independently; and was unable to make a rational and informed decision regarding whether to submit to treatment. In the space for a "detailed basis" for his opinion, Dr. Medi wrote, "Patient remains psychotic with auditory hallucinations,

2. The Seventy–Eighth Legislature repealed article 46.02 and replaced it with a new chapter 46B. See Act of April 30, 2003, 78th Leg., R.S., ch. 35, §§ 1, 15, 2003 Tex. Gen. Laws 57, 57, 72. The new law does not apply to proceedings initiated before January 1, 2004. See id. §§ 16–17, 2003 Tex. Gen. Laws at 72. Therefore, we will cite to article 46.02 throughout this opinion.

poor judgement, lack of insight." Finally, Dr. Medi opined that Marroquin presented a substantial risk of harm to himself or others if not immediately restrained and that Marroquin's condition was likely to continue for more than ninety days because "patient has remained psychotic for months despite medications and treatment."

State's Exhibit 2 consisted of two documents prepared by Dr. John R. Howlett: a "Forensic Examination" and a letter to the court captioned, "Re: Mental Illness in Candelario Ortiz Marroquin." As with Dr. Medi, Marroquin admitted to Dr. Howlett that he hears voices. But he also told Dr. Howlett that he recently had a Haldol injection and that the voices were " 'starting to leave.' " Dr. Howlett concluded that the voices are controlled most of the time by medication. Dr. Howlett also concluded that Marroquin was not competent to stand trial and that he was mentally ill, but that he did not require hospitalization in a mental health facility. Dr. Howlett believed that supervised psychiatric care would be sufficient to manage Marroquin's illness. Unlike State's Exhibit 1, State's Exhibit 2 did not include a certificate of medical examination for mental illness.

State's Exhibit 3 was a report by Dr. Michael Lennhoff of Kerrville State Hospital. Marroquin had been at that hospital since April 17, 2002. He was previously transferred from Kerrville State Hospital to another facility because he assaulted a staff member. Dr. Lennhoff noted that Marroquin had also made several suicide attempts in the past. Marroquin told Dr. Lennhoff that he had auditory hallucinations, but he was generally able to ignore them. According to Dr. Lennhoff, Marroquin denied that he had a mental illness.

As with Dr. Medi's report, Dr. Lennhoff's report was accompanied by a preprinted "Physician's Certificate of Medical Examination for Mental Illness" form. The certificate was dated May 1, 2002. In the space for a brief diagnosis, Dr. Lennhoff wrote, "Schizophrenia, paranoid type." Dr. Lennhoff checked boxes to reflect findings that Marroquin was mentally ill; was likely to cause serious harm to others (but not himself); would, if not treated, continue to experience deterioration of his ability to function independently; and was unable to make a rational and informed decision regarding whether to submit to treatment. In the space for a "basis" for his opinion, Dr. Lennhoff wrote, "Has been aggressive with patients and staff." Dr. Lennhoff also opined that Marroquin's condition was likely to continue for more than ninety days because "Patient remains hallucinatory and paranoid."

Marroquin presented the testimony of his sister. She claimed that she could take care of Marroquin if he were not committed.

■ The jury returned a unanimous verdict, finding that Marroquin was mentally ill; that he was likely to cause serious harm to himself and others; that if he was not treated he would continue to suffer severe and abnormal mental, emotional, or physical distress and would continue to experience deterioration of his ability to function independently; and that he was unable to make a rational and informed decision regarding whether to submit to treatment. The court therefore ordered Marroquin committed to a state mental health facility for twelve months.[3]

---

3. Because the court's order was signed on June 12, 2002, Marroquin's twelve-month commitment has already expired. Nevertheless, this appeal is not moot. See State v.

*Lodge,* 608 S.W.2d 910, 911 (Tex.1980); *Campbell v. State,* 68 S.W.3d 747, 753–54 (Tex.App.-Houston [14th Dist.] 2001), *aff'd,* 85 S.W.3d 176, 180 (Tex.2002); *L.S. v. State,* 867

### Civil Proceeding

■ Before considering the arguments raised by the parties, we must determine whether civil or criminal law governs this case. Competency hearings are civil in nature. *Blacklock v. State,* 820 S.W.2d 882, 886 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd). Proceedings to commit persons who have been found not guilty by reason of insanity are also civil in nature, notwithstanding the underlying criminal prosecution. *Campbell v. State,* 85 S.W.3d 176, 180 (Tex.2002).

■ We conclude that proceedings to commit persons who have been found incompetent to stand trial are likewise civil in nature. Our conclusion is bolstered by the fact that the heading for article 46.02, section 6, which governs this commitment proceeding, is "Civil Commitment—Charges Pending." *See* 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47:14, at 257–59 (6th ed.2000) (stating that a heading may serve as an aid to legislative intent). Accordingly, we will apply principles of civil law to resolve the parties' appellate arguments.

### Requirements for Certificates of Medical Examination for Mental Illness

Article 46.02, section 6, of the Code of Criminal Procedure provides that commitment proceedings are governed by the Mental Health Code, "to the extent [it] applies and does not conflict with this article...." TEX.CODE CRIM. PROC. ANN. art. 46.02, § 6(b)(2) (Vernon Supp.2003); *see* TEX. HEALTH & SAFETY CODE ANN. § 571.001 (Vernon 2003). Both section 6 and the Mental Health Code provide that a commitment hearing may not be commenced unless two certificates of medical examination for mental illness are on file with the

court. *See* TEX.CODE CRIM. PROC. ANN. art. 46.02, § 6(b); TEX. HEALTH & SAFETY CODE ANN. § 574.009(a) (Vernon 2003).

Section 6 states:

If it appears to the court that the defendant may be a person with mental illness and there is on file with the court Certificates of Medical Examination for Mental Illness by two physicians, at least one of whom must not be employed by the Texas Department of Mental Health and Mental Retardation, who have examined the defendant within 30 days of the date of the commitment hearing, the court shall impanel a jury to determine whether the defendant shall be committed to a mental health facility....

(1) If there has not been filed with the court the required Certificates of Medical Examination for Mental Illness, the judge shall appoint the necessary physicians, at least one of whom shall be a psychiatrist, ... to examine the defendant and file certificates with the court.....

TEX.CODE CRIM. PROC. ANN. art. 46.02, § 6(b).

Similarly, the Mental Health Code provides that a hearing for court-ordered mental health services "may not be held" unless two certificates are on file with the trial court. TEX. HEALTH & SAFETY CODE ANN. § 574.009(a). If the certificates are not on file, the court may appoint physicians to examine the proposed patient and may order the proposed patient to submit to the examinations. *Id.* § 574.009(b), (c). "If the certificates ... are not on file at the time set for the hearing ..., the judge shall dismiss the application and order the immediate release of the proposed patient...." *Id.* § 574.009(d).

S.W.2d 838, 840 n. 1 (Tex.App.-Austin 1993,    no writ).

Section 574.011 of the Mental Health Code sets forth the requirements for a certificate of medical examination for mental illness. Such a certificate must include the examining physician's opinion that:

(A) the examined person is mentally ill; and

(B) as a result of that illness the examined person is likely to cause serious harm to himself or to others or is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of his ability to function independently ...; and

(iii) not able to make a rational and informed decision as to whether to submit to treatment.

*Id.* § 574.011(a)(7).[4] When, as in this case, the certificate is offered in support of an application for extended mental health services, the certificate must also state that the examined person's condition will last for more than ninety days. *Id.* § 574.011(c). Additionally, the certificate must be sworn to and must include "the detailed reason" for the examining physician's opinions. *Id.* § 574.011(a), (e).

### The Certificates in this Case

It is undisputed that State's Exhibit 1 contains a proper certificate of medical examination for mental illness prepared by Dr. Medi. It is also undisputed that the certificate prepared by Dr. Lennhoff and included in State's Exhibit 3 does not comply with the statutory requirements because it was more than thirty days old at the time of the hearing. *See* TEX.CODE

CRIM. PROC. ANN. art. 46.02, § 6(b); TEX. HEALTH & SAFETY CODE ANN. § 574.009(a).

■ The dispute in this case centers on State's Exhibit 2. The State argued in the trial court that the documents in that exhibit amounted to the functional equivalent of a certificate of medical examination for mental illness. On appeal, the State acknowledges that State's Exhibit 2 does not meet the statutory requirements for such a certificate. We agree. Neither of the documents in the exhibit are sworn. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.011(a). Neither document states that Marroquin was likely to cause serious harm to himself or others. *See id.* § 574.011(a)(7)(B). Neither document states that Marroquin was suffering severe and abnormal mental, emotional, or physical distress, was experiencing substantial mental or physical deterioration of his ability to function independently, and was not able to make a rational and informed decision as to whether to submit to treatment. *See id.* § 574.011(a)(7)(B)(i),(ii),(iii). And neither document states that Marroquin's condition was expected to continue for more than ninety days. *See id.* § 574.011(c).

### Error Preservation

Marroquin brings two points of error on appeal: (1) the evidence is legally insufficient because two proper certificates of medical examination for mental illness were not admitted into evidence; and (2) the trial court erred by admitting State's Exhibit 2 because it did not contain a proper certificate of medical examination for mental illness. Under both of these points of error, Marroquin argues that the

---

**4.** These requirements track the findings a jury must make before the person may be committed. *See* TEX.CODE CRIM. PROC. ANN. art. 46.02, § 6(b)(5); TEX. HEALTH & SAFETY CODE ANN. § 574.035(a); *see also* TEX. HEALTH & SAFETY

CODE ANN. § 574.066(e) (providing that an application to renew an order for extended mental health services is treated the same as an original application if a hearing is set on the application for renewal).

trial court should not have proceeded with the commitment hearing because two proper certificates of medical examination for mental illness were not on file with the court. Despite couching his first point of error as a legal sufficiency point, Marroquin's prayer for relief requests only a remand to the trial court.

■ The State argues that Marroquin failed to preserve his argument that the court should not have proceeded with the commitment hearing because he "objected to the wrong thing at the wrong time." According to the State, Marroquin did not object to the *commencement of the hearing.* Instead, he objected only to the *admission* of State's Exhibit 2.

Before the jury was brought in, the following occurred:

**The Court:** Does the State have any motions?

**The State:** Your Honor, the State would move to admit State's Exhibit Number 2, which is a three-page forensic examination by Dr. Howlett, and it's dated May 20, 2002. Attached to that is a one-page letter entitled "Mental Illness of Candelario Ortiz Marroquin," also dated May 20, 2002.

Unattached is a form called a certificate of—that is required under Chapter 46, Physician's Certificate of Medical Examination for Mental Illness, the State would submit that the forensic examination and the mental illness letter adequately covered everything that is to be contained in this certificate.

It is our understanding, from prior cases, that Dr. Howlett does not like Chapter 46 of the Penal Code [sic] and has a hard time complying with the requirements of it and has expressed that he does not want to fill out the certificate, for some unknown reason. And we would submit to the Court that it's unnecessary and ask for the Court to take

the forensic examination and the mental illness letter . . . together being the certificate as required under Section 6.

And that's our motion, that the Court deem this as sufficient as constituting a certificate.

Defense counsel responded to the State's motion by stating that he had an "objection to make to what has been identified as State's Exhibit Number 2." He stated:

What I'm concerned about is the Code of Criminal Procedure Article 46.02, Section 6B, which indicates that in order for the burden to possibly be established, the State must submit not one, but two certificates of medical examination for mental illness, and we don't believe, your Honor, that Dr. Howlett's conclusions or the way that . . . he titles his forensic examination and then his letter concerning the mental illness in Candelario Ortiz Marroquin attached thereto meets the requirements of the statute under 46.02, Section 6B, in that that does not constitute, in our judgment, a certificate of mental illness where he specifically addresses the matters contained within the Code of Criminal Procedure and lays them out as does, for instance, the State's Exhibit 1 [Dr. Medi's certificate].

So under those circumstances, we would think that State's Exhibit Number 2 totally fails to meet the statutory requirements and the definition of a certificate of examination, and we would specifically object to it on those grounds.

The court overruled defense counsel's objection by stating that it would "deem [State's Exhibit 2] to be a certificate of medical examination for mental illness, even though it's not on a form that each of us may be used to seeing." Defense counsel renewed his objection to State's Exhib-

it 2 when that exhibit was offered at the hearing.

From this review of the record, it is clear that the State moved both to admit State's Exhibit 2 *and* to have the court deem it a proper certificate under the applicable statutory provisions. It is in this context that Marroquin objected to the exhibit on the ground that it failed to meet the statutory requirements.

■ To preserve his complaint for appellate review, Marroquin was required to make a specific and timely objection. TEX. R.APP. P. 33.1(a)(1)(A). A specific objection is one that enables the trial court to understand the precise grounds so as to make an informed ruling and that affords the opposing party the opportunity to remedy the defect if possible. *McKinney v. Nat'l Union Fire Ins. Co.*, 772 S.W.2d 72, 74 (Tex.1989). Marroquin's objection was sufficient to apprise the court and the State that he did not believe State's Exhibit 2 satisfied the statutory requirements for a certificate of medical examination for mental illness. Moreover, Marroquin made his objection before the hearing commenced. We therefore conclude that Marroquin preserved the issue of whether State's Exhibit 2 satisfied the statutory requirements for a certificate of medical examination for mental illness.

■ We liberally construe briefs to avoid waiver and to obtain a just, fair, and equitable adjudication of litigants' rights. *See El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 316 (Tex.1999). We consider the arguments supporting

each issue or point of error and not merely the wording of the issues or points. *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex.1995). In particular, we should consider an argument that is argued under a point of error if the argument is so "inextricably entwined" with the issue specified in the point of error that "one cannot be mentioned without automatically directing attention to the other." *Consolidated Eng'g Co. v. Southern Steel Co.*, 699 S.W.2d 188, 192 (Tex.1985); *First State Bank v. Keilman*, 851 S.W.2d 914, 920 (Tex.App.-Austin 1993, writ denied).

■ Marroquin's points of error regarding the insufficiency of the evidence and the inadmissibility of State's Exhibit 2 are inextricably entwined with his argument that the court should not have conducted the hearing. All of these contentions are based on the absence of a proper certificate of medical examination for mental illness. We therefore construe Marroquin's brief as requesting that we reverse and remand because the trial court erred by conducting the hearing with only one proper certificate of medical examination for mental illness on file.

### Conclusion

■ A trial court may not conduct a section 6 commitment hearing unless two certificates of medical examination for mental illness are on file. *See* TEX.CODE CRIM. PROC. ANN. art. 46.02, § 6(b); TEX. HEALTH & SAFETY CODE ANN. § 574.009(a).[5] Therefore, conducting the hearing with only one proper certificate on file was harmful error. *See* TEX.R.APP. P.

---

**5.** In *Campbell,* the Supreme Court held that certificates of medical examination for mental illness are not necessary in a proceeding to determine whether a person who has been found not guilty by reason of insanity should be released from commitment. 85 S.W.3d at 183. Unlike the statute at issue in this case, the statute that governs those proceedings

does not mention the certificates. *Compare* TEX.CODE CRIM. PROC. ANN. art. 46.02, § 6(b) *with id.* art. 46.03, § 4(d)(5). Accordingly, the holding in *Campbell* is not applicable to this case. In its appellate brief, the State admits that two certificates are required for the commencement of a competency hearing under article 46.02, section 6.

44.1(a)(1); *cf. North Ridge Corp. v. Wal-raven,* 957 S.W.2d 116, 118 (Tex.App.-Eastland 1997, pet. denied) (holding that a trial court committed harmful error by submitting a discovery rule question to the jury because there were no pleadings to support the submission).

The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.[6]

---

**6.** In the event subsequent commitment proceedings are brought against Marroquin, we remind the parties and the trial court that the Mental Health Code sets standards for determining whether evidence is clear and convincing. To be clear and convincing, there must be "evidence of a recent overt act or a continuing pattern of behavior that tends to confirm ... the likelihood of serious harm to the proposed patient or others ... or ... the proposed patient's distress and the deterioration of the proposed patient's ability to function." TEX. HEALTH & SAFETY CODE ANN. § 574.035(e). The certificates of mental examination for mental illness are not sufficient to support a commitment order. *Id.* § 574.035(g). Instead, the court *"shall hear testimony"* at the hearing. *Id.* (emphasis added). This testimony "must include ... medical or psychiatric testimony." *Id.*