NO. 12-04-00265-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS FOR                          §                 APPEAL FROM THE
 
THE BEST INTEREST AND                           §                 COUNTY COURT AT LAW
 
PROTECTION OF J.C.                                     §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant J.C. appeals from an order of commitment for temporary inpatient mental health
services. After a hearing without a jury, the trial court entered orders committing J.C. to Rusk State
Hospital for a period not to exceed ninety days and authorizing the hospital officials to administer
psychoactive medication. In seven issues, J.C. asserts state and federal due process and equal
protection violations, legal and factual sufficiency of the evidence, and failure to meet statutory
conditions precedent. We reverse and render.
 
Background
            On August 10, 2004, the State filed an application for court-ordered temporary mental health
services requesting that the trial court commit J.C. to Rusk State Hospital for a period not to exceed
ninety days. The State supported its application with two certificates of medical examination for
mental illness. The first was prepared by Dr. C. Cuellar. Dr. Cuellar examined J.C. on August 9 and
diagnosed her as suffering from schizoaffective disorder. In his physician’s certificate, Dr. Cuellar
stated that J.C. is mentally ill, is likely to cause serious harm to herself, and is suffering severe and
abnormal mental, emotional, or physical distress, is experiencing substantial mental or physical
deterioration of her ability to function independently, which is exhibited by her inability, except for
reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety, and
is unable to make a rational and informed decision as to whether or not to submit to treatment. Dr.
Charles Plyler examined J.C. on August 10, diagnosing her with schizoaffective disorder. However,
Dr. Plyler failed to check at least one of the three additional criteria required by section 574.034(a). 
See Tex. Health & Safety Code Ann. § 574.034(a) (Vernon 2003).
            At a hearing held on August 13, Dr. Plyler testified, first reiterating that J.C. is mentally ill,
suffering from schizoaffective disorder. Dr. Plyler stated it was an oversight on his part that he did
not check at least one of the additional criteria. Appellant objected based on notice, relevancy, and
due process. The trial court overruled her objection. Dr. Plyler then testified that he would have
checked the first prong – that J.C. is likely to cause serious harm to herself. He stated that he also
agreed with Dr. Cuellar’s analysis about the third prong – that J.C. is suffering severe and abnormal
mental, emotional, or physical distress that would make her incapable of functioning independently
outside the hospital, and is unable to make a rational and informed decision as to whether or not to
submit to treatment; however, he did not believe there was sufficient information to support it. 
            Dr. Plyler based his opinion on J.C.’s diminished capacity to test reality – that she cannot see
to her own safety and her behavior leads her into dangerous situations. Dr. Plyler explained that J.C.
is intrusive in the hospital ward and her intrusiveness provokes hostility from other patients. He also
stated that J.C. has trouble communicating with the staff because of the extent of her delusions. 
Further, the doctor stated that J.C. has to be observed continually to prevent her from running into
the street although he conceded that she was no longer on “close observation.” Dr. Plyler testified
that Rusk State Hospital is the least restrictive option available.
            The State moved for a trial amendment to allow Dr. Plyler to complete his physician’s
certificate. Appellant objected and the trial court sustained the objection. 
            On cross examination, Appellant questioned Dr. Plyler about the three prongs. Dr. Plyler
reiterated that he could not support the third prong with evidence although he was not opposed to
Dr. Cuellar’s assessment. He also conceded that he knows of no recent overt act to support any of
the prongs.
            Dr. Plyler testified that J.C. would have difficulty “cooking, starting fires, all kinds of things.” 
He explained further that if J.C. is not supervised all the time, she is in danger. J.C. cannot care for
her basic needs, such as safety. Further, she is unable to make a rational and informed decision to
submit to treatment. Dr. Plyler testified that J.C. requires assistance feeding herself. He doubted that
she would be capable of ordering food from a restaurant. The doctor explained that her continuing
delusions and intrusive behavior invites threatening responses from others. Dr. Plyler cited J.C.’s
numerous interruptions in the courtroom as an example of her intrusiveness. He conceded he could
not think of any recent overt act that would indicate that she is likely cause harm to herself.
            After the State rested, Appellant again objected that the incomplete physician’s certificate was
insufficient to meet the statutory requirements. She also moved for a directed verdict. The trial court
denied the motions. J.C. then testified on her own behalf. She denied having problems with anyone
at the hospital other than one person who was expecting a phone call and was “driving [her] off.” J.C.
denied needing assistance dressing herself or walking to the cafeteria. She denied being in any fights. 
Although she does not cook, she does her own shopping. J.C. testified that she had a place to stay
should she be released. She also stated that she was not disabled and could work. 
            Appellant then called Dr. Plyler to testify. The doctor conceded that J.C.’s appearance in court
was acceptable and that she was not responding to internal stimuli. He also testified that she made
coherent and rational responses to the questions posed. Finally, Dr. Plyler conceded that J.C. would
be able to survive safely in freedom if, in fact, she had friends or family to help her. 
            On August 13, the trial court entered an order of temporary inpatient mental health services
after determining that the evidence supports the allegations that J.C. is mentally ill, is likely to cause
serious harm to herself, is suffering severe and abnormal mental, emotional, or physical distress, is
experiencing substantial mental or physical deterioration of her ability to function independently,
which is exhibited by her inability, except for reasons of indigence, to provide for her basic needs,
including food, clothing, health, or safety, and is unable to make a rational and informed decision as
to whether or not to submit to treatment. The trial court ordered J.C. committed to Rusk State
Hospital for a period not to exceed ninety days.
            After a recess, the trial court held a hearing on the State’s application for court-ordered
administration of psychoactive medication. Dr. Plyler testified that J.C. refused to accept medications
voluntarily. The doctor stated that he did not believe J.C. has the capacity to make a rational decision
regarding the administration of psychoactive medications. He explained that the classes of
medications he set forth in Exhibit A are in the proper course of treatment for J.C, in her best interest,
and if administered, will likely benefit her. Dr. Plyler testified that the benefits outweigh the risks
and that her time at the hospital will likely be shortened with medication. 
            Dr. Plyler testified that when he discussed medications with J.C., she “jumped up and ran out
of the room.” He believed J.C. did so because she has been on medication before and believes she
does not need it. The doctor stated that there are no alternatives that could render the same or similar
results.
            J.C. testified on her own behalf. She testified that she did not want to take any medications,
explaining that she knows what works and what does not. J.C. stated that Zoloft and Ativan are “just
trash.” “Sir, I want Zyprexa. Zyprexa is what I have taken. I have no problem with it.” In a separate
order signed the same day, the trial court authorized the hospital officials to treat J.C. with
psychoactive medication. This appeal followed.
 
Statutory Conditions Precedent
            In her sixth issue, J.C. asserts that the trial court erred in conducting a hearing on the State’s
application and entering an order of commitment because the statutory conditions precedent were not
met.


 We agree.
Applicable Law
            The Mental Health Code provides that a hearing for court-ordered mental health services may
not be held unless two physician’s certificates are on file with the trial court. Tex. Health & Safety
Code Ann. § 574.009(a) (Vernon 2003). If the certificates are not on file at the time set for the
hearing, the judge shall dismiss the application and order the immediate release of the proposed
patient. Id. § 574.009(d). 
            Section 574.011 of the Mental Health Code sets forth the requirements for a certificate of
medical examination for mental illness (the physician’s certificate). Tex. Health & Safety Code
Ann. § 574.011 (Vernon 2003). Such a certificate must include (among other things) the examining
physician’s opinion that the examined person is mentally ill and as a result of that illness the examined
person is likely to cause serious harm to herself or to others or is suffering severe and abnormal mental,
emotional, or physical distress, experiencing substantial mental or physical deterioration of her ability
to function independently, and not able to make a rational and informed decision as to whether or not
to submit to treatment. Id. § 574.011(a), (3).
            It is undisputed that Dr. Cuellar’s physician’s certificate was completed properly. It is also
undisputed that Dr. Plyler’s certificate did not state that J.C. was likely to cause serious harm to herself
or others. See id. § 574.011(a)(7)(B). Further, it did not state that J.C. was suffering “severe and
abnormal mental, emotional, or physical distress, experiencing substantial mental or physical
deterioration . . . and was not able to make a rational and informed decision as to whether or not to
submit to treatment.” See id. § 574.011(a)(7)(B)(i)–(iii). Thus, Dr. Plyler’s certificate was insufficient
to meet the statutory requirements. 
            The statutory requirements for an involuntary commitment are strict because an involuntary
commitment is a drastic measure. In re Breeden, 4 S.W.3d 782, 789 (Tex. App.–San Antonio 1999,
no pet.). Because Dr. Plyler’s certificate did not conform to the statutory requirements, we hold the
trial court erred in conducting a hearing on the application for court-ordered temporary mental health
services and entering an order of commitment. See Marroquin v. State, 112 S.W.3d 295, 303-04 (Tex.
App.–El Paso 2003, no pet.). We sustain J.C.’s sixth issue.
Psychoactive Medication
            In her seventh issue, T.A. asserts the evidence is legally and factually insufficient to support
the order authorizing administration of psychoactive medication. She argues that such an order must
be based on a valid order for inpatient mental health care and, due to the reasons asserted in her first
six issues, the trial court’s order for inpatient mental health care is not valid.
            The court may enter an order authorizing the administration of psychoactive medication if it
finds by clear and convincing evidence that the patient is under an order for temporary or extended
mental health services, the patient lacks the capacity to make a decision regarding the administration
of the proposed medication, and treatment with the proposed medication is in the best interest of the
patient. Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003). We have concluded that
the trial court’s order for temporary mental commitment is invalid. Therefore, the order authorizing
administration of psychoactive medication is also invalid. See id. We sustain J.C.’s seventh issue.
 
Disposition
            We reverse the trial court’s orders of commitment for temporary inpatient health services and
administration of psychoactive medication. We render judgment denying the State’s applications for
court-ordered temporary mental health services and for an order to administer psychoactive
medication.
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered May 4, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
(PUBLISH)