

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHELLE JEANETTE BARRIENTES, | § | No. 08-23-00113-CR |
| Appellant, | § | Appeal from the |
| v. | § | 226th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2021-CR-4408) |

## MEMORANDUM OPINION

Discovery disputes are endemic in civil litigation. Entire seminars are devoted to discovery issues. Recalcitrant parties are subject to motions to compel, monetary sanctions, and in the most extreme cases, "death penalty" sanctions—meaning their claims or defenses are extinguished.[1] Some features of civil discovery also exist in our criminal courts. This case deals with the response to a subpoena duces tecum issued on behalf of a grand jury. While serving as the Constable of Precinct Two of Bexar County, Appellant Michelle Jeanette Barrientes was served with a grand

---

[1] *See e.g. TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 920 (Tex. 1991) ("In all but the most egregious circumstances, other lesser sanctions should be tried first before imposing the ultimate sanction of the "death penalty" (dismissal of pleadings)) (Gonzalez, J., concurring).

jury subpoena for records.[2] According to the State, she failed to produce some records, including some that she created after being served. That claimed failure led not to a motion to compel or show cause hearing, but to a two-count criminal indictment for tampering with or fabricating evidence. Tex. Pen. Code Ann. § 37.09(a). A jury found her guilty of both counts. We hold that her conviction is not supported by legally sufficient evidence and render a judgment of acquittal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2017, Appellant took office as the Constable of Precinct Two in Bexar County. Part of the duties of that office included providing security at Rodriguez Park, a public park in her precinct. Rodriguez Park has pavilions and kitchens available for the public to rent. When an individual rents one of these spaces, they are required to hire a security officer if they will have 50 or more guests in attendance or alcohol will be present. Patrons reserve the pavilions and kitchens online but are directed to contact the precinct to arrange for security.

Even though arrangements for security are made through the precinct, the security jobs at these private events were not part of the deputies' official duties but were "side jobs." In the past, park patrons paid the deputies in person at the time of their event. While Appellant was constable, she changed the procedure to require payment to be made to her office before the event.[3]

Susan Tristan, a clerk at Precinct Two, was the primary person responsible for Rodriguez Park security arrangements. She would receive weekly emails from the County Parks and Recreation Department with a list of reservations for the upcoming week. She would call the

---

[2] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent they might conflict with our own. *See* Tex. R. App. P. 41.3.

[3] The reason given for the change was to prevent situations where patrons refused to pay at the last minute and to avoid the appearance of uniformed officers taking cash from people.

patrons to discuss whether they needed security officers under the county's rules. When a patron came in, she filled out a security agreement with information about the date and hours of the party, the number of guests, whether there would be alcohol at the event, and the cost of security. The patron would pay Tristan cash and she would give him or her a receipt. Tristan would then give the money and a copy of the security agreement to Appellant, who in turn would pay the deputies working the event. Sometimes, Appellant would write the name of the deputy that was assigned to work security in the margins of the security agreement. Appellant would occasionally give these security agreements back to Tristan to keep with the rest of the Rodriguez Park documents.

For auditing purposes, Tristan created various documents to keep track of the money coming in and out of the precinct for Rodriguez Park security. She made an Excel spreadsheet that she titled "receipt log" which included the date and amount of money she received, the receipt number, and the number of deputies who worked the event. She also created what she called "cash logs" even though the documents are each titled differently ("Rodriguez Park–Cash Log" "Rodriguez Park cashbox recd cash"; "Cash Log") or are untitled  Those logs, like the receipt logs, showed the cash received, receipt number, and the date of payment. Unlike the receipt logs, the cash logs sometimes listed the deputy who worked the event. Tristan kept all these records and receipt books on her desk in a purple folder so that other clerks could take payments for security officers if she were out of the office.

In 2019, Jesus Reyes reserved a pavilion for a family party on Easter Sunday, as he did every year. Before that Sunday, a park employee mistakenly told Appellant that Reyes had cancelled his reservation, so Appellant reserved it for her own family's party. Once the mistake was discovered, Appellant and her family moved their party to a different area. But she saw that someone was drinking alcohol at Reyes' party, and he had not arranged to have security as required

by the rules. She told him that he would have to pay for security if he wanted to continue with the party, and Reyes went to an ATM and paid a deputy a total of $300.00. Reyes felt intimidated and later reported the incident to the media. Because of this incident, Appellant's practices of assigning security officers and paying them came under greater scrutiny.

On June 11, 2019, Texas Ranger Bradley Freeman served Appellant with a grand jury subpoena commanding the production of "SECURITY AGREEMENT CONTRACT RECORDS and Deputy work assignments and schedules related to the security contract records along with a business records affidavit for RODRIGUEZ PARK SECURITY ASSIGNMENTS from January 1st 2017 to June 11th 2019." Appellant called Ranger Freeman the next day and he clarified that he was requesting information about scheduling of deputies to work security at the park.

Appellant asked Tristan to make copies of all the Rodriguez Park records. Tristan made seven copies of the records and returned the originals to her purple folder.[4] And Tristan was told to create a new document matching receipt numbers and dates. The information was too much for her to compile so someone else helped to write in information, although she did not recognize the handwriting. Appellant also handwrote six pages matching receipt numbers with the date of the event, the amount paid, and either the name or the number of deputies who worked. Tristan helped Appellant make this document by providing her with the receipt information, but she testified that Appellant wrote the deputy assignment apparently from memory. During trial, these newly created documents were usually referred to as "cash logs" or "handwritten cash logs." As a result, there are two groups of documents referred to as "cash logs"–those in existence when the subpoena was served and those that Appellant and Tristan created afterward.

---

[4] Some of the security agreements were missing because before Appellant was served with the subpoena, Tristan and another clerk had shredded some of the older agreements.

Tristan testified that after being served with the subpoena, Appellant told her "You need to watch your back; you need to get an attorney." Tristan was afraid she would lose her job and on June 13, 2019, two days after the subpoena was served, Tristan called Ranger Freeman and offered to give him information about Precinct Two. She met with him that day after work and gave him copies of the Rodriguez Park records, including the cash logs.

Tristan continued to cooperate with Ranger Freeman and an FBI agent investigating Appellant. She met with them several times and carried a hidden recording device to work three times. At one point, Ranger Freeman and Tristan made a plan that he would call Appellant and ask if he could interview Tristan and that Tristan would behave nervously so that she could record Appellant's reaction. When Tristan met with Ranger Freeman later that day, she said that Appellant only told her not to worry and to just tell the truth. But at trial, she testified that it was other members of Appellant's administration that said that, and not Appellant herself.

Appellant hired an attorney to help her respond to the grand jury subpoena. At trial, the attorney testified that Appellant or someone from her staff–he could not remember who–brought the documents to his office and that he delivered them to the District Attorney's Office without removing or altering any of the documents.

Once Appellant responded to the subpoena, Ranger Freeman compared the response with the documents that Tristan had given him and realized that Appellant had not produced the "cash logs." Now knowing what documents existed, Ranger Freeman emailed Appellant telling her that the records she produced did not include the names of deputies who had been assigned to provide security at events in Rodriguez Park. Appellant responded that she gave all the records she had to her attorney who gave them to the District Attorney's Office. Ranger Freeman then served

Appellant with another subpoena, tailoring the language to ask for information the cash logs contained–specifically, the deputy security assignments:

> PLEASE PROVIDE Security Records and Deputy/Police Officer assignments and schedules related to the security for Rodriguez Park for the period of time beginning January 1, 2017 through the present time. Specifically, any documents displaying the names of the officers and the individual dates/events they were assigned to, along with any other related information, such as the time, pavilion location, hours worked, compensation received, etc. If such documentation does not exist please provide an absence of business records affidavit.[5]

Appellant again responded that she had already provided all the documents that she had, and Tristan signed an affidavit that stated, "no records other than those provided."

On September 23, 2019, Ranger Freeman and 23 other law enforcement officers, mostly FBI, raided Precinct Two. On Tristan's desk was the purple folder with all the Rodriguez Park documents, including the cash logs that Appellant had not produced in response to the subpoena.

Appellant was indicted on two counts of tampering with or fabricating physical evidence. Appellant was also indicted for official oppression and aggravated perjury, but those charges were severed into their own cases. Before trial, the trial court granted a motion *in limine* requiring the attorneys to approach the bench before eliciting any testimony about other charges against Appellant.

In the guilt-punishment phase of trial, the State's two main witnesses were Tristan and Ranger Freeman. Ranger Freeman was advised about the order *in limine* and was instructed that his testimony must relate only to Rodriguez Park. If he were unsure whether he was allowed to give a particular answer under the trial court's order *in limine*, he was to ask for a break. Yet when the State asked him if he believed Appellant committed any offenses, he revealed to the jury

---

[5] Ranger Freeman testified that while he was trying to obtain all the "cash logs," he did not word the subpoena to ask for them by that name out of a fear that Appellant would realize that Tristan was working with the Texas Rangers and providing it with information about how the documents were referred to within the precinct.

6

another charge against Appellant by answering, "Tampering with the evidence and official oppression." The trial court instructed the jury to disregard the answer. Appellant moved for a mistrial which was denied.

The jury found Appellant guilty on both counts. Appellant elected punishment by the judge and the trial court sentenced Appellant to six years, suspended the sentence and placed her on community supervision for five years with 90 days of incarceration.

On appeal, Appellant argues that the trial court erred in denying her motions for mistrial and new trial based on Ranger Freeman's violation of the *in limine* order (issues one and two). She also argues that the evidence was legally insufficient to support the judgment (issues three and four). Because her sufficiency issues are dispositive of the appeal, we start and end our discussion there.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

A person commits the offense of tampering with or fabricating evidence if he or she knows "that an investigation or official proceeding is pending or in progress" and either

(1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; or

(2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding.

Tex. Pen. Code Ann. § 37.09(a). Appellant was charged with and found guilty of two counts, corresponding to the two statutory methods of committing the offense: (1) altering or concealing the handwritten cash logs and (2) making or using false handwritten cash logs. She challenges the sufficiency of the evidence to support the verdict on both counts.

7

The Fourteenth Amendment guarantee of due process requires that every conviction must be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In reviewing the legal sufficiency of the evidence to support a criminal conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard applies whether the evidence was direct or circumstantial. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We defer to the fact-finder to make inferences and resolve conflicts in the evidence. *Id.* "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* We do not re-weigh evidence or substitute our judgment for that of the fact-finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We may not resolve any conflict of fact or assign credibility to the witnesses. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992) (en banc).

We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). That said, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex. Crim. App. 1988) (en banc). Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.*, citing *Jackson*, 443 U.S. at 318.

III. ANALYSIS

## A. Evidence of concealing

Although the indictment and jury charge include the phrase "altered or concealed," the State does not argue that Appellant altered documents already in existence after being served with the subpoena. *Stahmann v. State*, 602 S.W.3d 573, 579 (Tex. Crim. App. 2020) (altering "means that the defendant changed or modified the thing itself"). Instead, it argues only that Appellant concealed documents by not producing them in response to the grand jury subpoenas. We have found no case in which the failure to fully respond to a subpoena was held to constitute concealing evidence. The Fort Worth Court has stated the opposite–"lying or withholding information" is not "concealing" the evidence for the purposes of § 37.09. *Rotenberry v. State*, 245 S.W.3d 583, 589 (Tex. App.—Fort Worth 2007, pet. ref'd).[6]

The offense of tampering by concealing requires both the intent to conceal and *actual* concealment. *Stahmann*, 602 S.W.3d at 581 ("intent and concealment are two distinct elements of the offense"). "Actual concealment requires a showing that the allegedly concealed item was hidden, removed from sight or notice, or kept from discovery or observation." *Id.* at 581, quoting *Stahmann v. State*, 548 S.W.3d 46, 57 (Tex. App.—Corpus Christi–Edinburg 2018).

In *Stahmann v. State*, the Court of Criminal Appeals reversed a conviction for concealing evidence when the defendant tried unsuccessfully to hide a controlled substance. In that case, third parties who stopped to render aid after an automobile accident saw the defendant throw a pill bottle over the fence. *Stahmann*, 602 S.W.3d at 575–76. Once an officer arrived, the third parties showed

---

[6] The Code of Criminal Procedure provides that a court can fine a witness for disobeying a subpoena, including by refusing to produce evidence, but does not make the violation a criminal offense. Tex. Code Crim. Pro. Ann. art. 24.05, 24.06.

the officer the pill bottle. *Id*. The Court held that the evidence was insufficient to support a conviction for tampering with the evidence because the pill bottle which "landed short of the bush in plain view on top of some grass" was never actually concealed. *Id.* at 581. The Court noted that the result may have been different if the third parties had not been able to see the bottle or had not shown it to the officer who could also then easily see it. *Id*. at 580; c*f. McPherson v. State*, 677 S.W.3d 663, 666 (Tex. Crim. App. 2023) (holding that there was sufficient evidence of concealment when a driver threw marijuana out of his vehicle because, unlike in *Stahmann*, there were no witnesses, the evidence was not in "continuous sight" and the officer could not immediately locate the evidence.).

Despite the factual differences between this case and *Stahmann*, the concealment analysis compels the same result. Tristan, like the third parties in *Stahmann*, always knew the location of all the Rodriguez Park documents. She testified that they were kept in a purple folder on her desk, and that is where the documents were found when the search warrant was executed. There was no evidence that Appellant took any action to hide them. Moreover, Ranger Freeman himself actually had the cash logs. Two days after the subpoena was served, and well before a response was due, Tristan gave copies of the cash logs to Ranger Freeman. Even if we assume that Appellant intended to conceal the cash logs by withholding them from production, there was no evidence from which a trier of fact could find the essential element of *actual* concealment. The cash logs were not "hidden, removed from sight or notice, or kept from discovery or observation." *Stahmann*, 602 S.W.3d at 581.

Appellant's third issue is sustained.

## B. Evidence of making or using a false record

The second count of the indictment alleged that Appellant "intentionally or knowingly made or used a record or document, namely, Rodriguez Park Handwritten cash logs with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding."[7] At trial, to support its allegation that Appellant fabricated the cash logs, the State pointed to a discrepancy between the cash logs and a security agreement for an event on May 25, 2019. The security agreement had Deputy O'Neil's name written into the margin, which suggested that he had been assigned to work. According to the State, O'Neil was a reserve deputy and so was not legally allowed to work security. Texas Occ. Code Ann. §1702.322 (excepting reserve peace officers from the provisions allowing for private employment as a paid security officer). The cash logs show Deputy Pena as having worked security for that event. The State suggested that Appellant fabricated the cash logs to hide an improper use of reserve deputies as security officers. In a discussion out of the presence of the jury about the relevance of that evidence, the State argued, "So [Appellant's] log actually substituted a full-time person in place

---

[7] The State argues that Appellant presents nothing for review because in her brief, Appellant argues there was insufficient evidence to support a guilty verdict for "making, presenting, or using the *receipt logs* with intent to affect the grand jury proceeding." However, the indictment at the time of trial related only to "handwritten cash logs," not "receipt logs." First, we note that the documents that Appellant created and that are the basis of this charge have no title on them. "Cash logs" is not a term of art, but simply what the parties called the records during trial. Those records contain much of the same information as the records the parties refer to as receipt logs–namely, the receipt number, date and amount of money received. Second, it is clear from Appellant's brief that her argument is about the same records that are referred to by the parties as the cash logs even though she calls them receipt logs. For example, she specifically addresses the discrepancy in the cash logs about who was assigned to work security on May 25, 2019. Regardless of her use of the term "receipt logs" in her brief, Appellant is obviously referring to the "cash logs." Appellant's brief fairly raises a challenge to the legal sufficiency of evidence to support the verdict for fabricating cash logs. *Nassouri v. State*, 503 S.W.3d 416, 420 (Tex. App.—San Antonio 2016, no pet.) ("appellate courts 'liberally construe briefs to avoid waiver and obtain a just, fair, and equitable adjudication of [the] litigant's rights.'") (quoting *Marroquin v. State*, 112 S.W.3d 295, 303 (Tex. App.—El Paso 2003, no pet.); Tex. R. App. P. 38.9 ("briefing rules to be construed liberally").

11

of the reserve that was listed on the security agreement." In closing, the State argued that O'Neil worked as a reserve and was not paid.

To constitute the offense of fabricating evidence, an individual must not only make, present or use a record, but must also do so "with knowledge of its *falsity*." Tex. Pen. Code Ann. §37.09(a)(2) (emphasis added). The State's evidence showed only that there was a discrepancy between the cash logs and a security agreement about the security assignment on May 25, 2019. Appellant countered this argument by presenting evidence that Deputy O'Neil was no longer a reserve deputy in May 2019 and could legally work as a security officer.[8] But, even if Deputy O'Neil were only a reserve at the time, the State presented no evidence that the information in the cash logs created by Appellant was false. Even though Deputies Pena and O'Neil both testified at trial, the State did not ask either who actually worked security on May 25, 2019. And the discrepancy between the cash logs and security agreement does not mean that one of the documents is false. As Tristan testified, Deputy O'Neil may have been originally assigned, but was unable to work and Deputy Pena worked the event instead.

The State also had to prove that Appellant made the cash logs "with intent to affect the course or outcome of the investigation." Tex. Pen. Code Ann. § 37.09(a)(2). Yet this theory is at odds with the State's claim under the first count that Appellant did not produce the logs in response to the subpoena or otherwise provide them to law enforcement. With Count one (concealing evidence), the State argued that withholding the records affected the investigation because without them, it did not have all the relevant facts. Ranger Freeman testified that the records would have helped by providing "the names of the officers, hours, times, and that will help us with interviews,

---

[8] Additionally, Appellant was apparently not trying to cover up her use of Deputy O'Neil to work security because the cash logs she created list him as working two other events, also in May 2019.

12

who to talk to, what they did, when they did it." But the State does not explain how information that it claims is false would have furthered the investigation, or how Appellant could have intended for the records to affect the investigation when she did not provide them. The State did not produce evidence that Appellant intended to affect the investigation by creating cash logs.

Appellant's fourth issue is sustained.

### C. Violation of Motion in Limine

Because we reverse Appellant's conviction for legally insufficient evidence, we do not need to reach the issue of whether the trial court erred in denying a mistrial or motion for new trial after Ranger Freeman testified about other charges in violation of the motion in limine. Tex. R. App. P. 47.1 (requiring courts of appeal to address issues "necessary to final disposition of the appeal").

## IV. CONCLUSION

Because the evidence was insufficient to support Appellant's conviction on either count of tampering with or fabricating physical evidence, we reverse the conviction and render a judgment of acquittal.


JEFF ALLEY, Chief Justice

October 3, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

13