**Nathan Dale CAMPBELL, Petitioner,**

v.

**The STATE of Texas, Respondent.**

**No. 01–1185.**

Supreme Court of Texas.

Argued April 10, 2002.

Decided Aug. 29, 2002.

---

**15.** *E.g., EZ Pawn,* 934 S.W.2d at 90; *Prudential,* 909 S.W.2d at 900.

**16.** Tex.R.App P. 59.1.

James Michael Leitner, The law Office of James M. Leitner, Floyd L. Jennings, Houston, for Petitioner.

Charles A. Rosenthal, Harris County District Attorney, Calvin A. Hartmann, Diana Lynn Glaeser, Assistant District Attorneys, Kevin P. Keating, The Harris County District Attorney's Office, Colleen Patrice Barnett, Assistant District Attorney, Houston, for Respondent.

Justice ENOCH delivered the opinion of the Court.

Nathan Dale Campbell challenges a trial court order extending his involuntary commitment in a state mental hospital. Campbell claims that the trial court erred in conducting the hearing that resulted in the commitment order without two medical certificates described in Texas Mental Health Code sections 574.009 and 574.011 being on file.[1] The court of appeals, with

---

1. The parties discuss certain Texas Health & Safety Code provisions that are contained

one justice concurring in part and dissenting in part, upheld the commitment order. The court of appeals concluded that the medical certificates described in the Mental Health Code were not a prerequisite to the trial court holding a hearing under Texas Code of Criminal Procedure article 46.03 section 4(d)(5) to determine whether Campbell should be released from his commitment.[2] We agree with the court of appeals and affirm its judgment.

## I

Campbell was indicted for aggravated kidnaping and aggravated assault after he attempted to remove his girlfriend's eyes with a knife. On April 28, 1997, after a bench trial, the trial court found him not guilty by reason of insanity. Campbell was then automatically committed to Vernon State Hospital's maximum security facility.[3] Subsequently, Campbell was transferred to Rusk State Hospital, a less restrictive facility. Campbell currently resides at Kerrville State Hospital.

While Campbell was at Rusk State Hospital, the superintendent there submitted a report to the trial court stating that, according to Campbell's attending psychiatrist, Campbell no longer needed inpatient treatment. The superintendent recommended Campbell's release "with follow-up care by [the] Harris County Mental Health Authority to assure medication management and periodic counseling." A letter from Campbell's treating physician, Dr. Robert Higginbotham, accompanied the superintendent's report. Dr.

Higginbotham stated that because Campbell's aggressive behavior and substance abuse problems were in remission, and because Campbell had a supportive family, he no longer needed inpatient psychiatric treatment. Attached to Dr. Higginbotham's letter was a "Certificate of Medical Examination for Mental Illness," dated May 9, 2000. In the certificate, Dr. Higginbotham indicated that Campbell did not meet the criteria for court-ordered mental health services.[4]

The State moved the trial court to appoint Dr. Vic Scarano and Dr. Fred Fason to conduct psychiatric examinations of Campbell. The trial court granted the motion on May 25, 2000. The next day, the trial court rendered an order requiring Campbell to be transported to the courthouse on May 31, 2000.

After conducting their psychiatric examinations, Dr. Scarano and Dr. Fason filed medical certificates with the trial court. Dr. Scarano's certificate, dated May 28, 2000, found that Campbell was mentally ill but did not meet the criteria necessary for continued inpatient treatment. Dr. Fason's certificate, dated May 30, 2000, found that Campbell was mentally ill and did meet the criteria for continued inpatient treatment. The record also contained a letter from Douglas Samuels, M.D., who the trial court had ordered to make a recommendation for the most appropriate treatment for Campbell.[5] Dr. Samuels stated that moving Campbell from inpatient to outpatient care would require a highly structured program with daily mon-

---

within Title 7, Subtitle C of the Health & Safety Code. Title 7, Subtitle C—consisting of sections 571.001 through 578.008—is the current Texas Mental Health Code. *See* TEX. HEALTH & SAFETY CODE §§ 571.001–578.008. We accordingly refer to the Mental Health Code when discussing a provision from Title 7, Subtitle C, rather than the Health & Safety Code.

2. 68 S.W.3d 747.

3. TEX.CODE CRIM. PROC. art. 46.03, § 4(b).

4. *See* TEX. HEALTH & SAFETY CODE § 574.011.

5. *See id.* § 574.012.

itoring, which the Harris County Mental Health Authority was incapable of providing.

On May 31, 2000, the State filed an application for extended court-ordered mental health services. That same day, the trial court held a hearing, with Campbell present, to determine whether he should be released from his commitment. Dr. Scarano and Dr. Fason, among others, testified. Campbell's counsel objected to proceeding with the hearing without two medical certificates being on file stating that Campbell met the Mental Health Code's criteria for continued inpatient treatment. The trial court overruled that objection and conducted the hearing.

On June 2, 2000, the trial court ordered Campbell committed to Rusk State Hospital for another year of inpatient treatment. The order states that the trial court previously found that Campbell had committed an act, attempt, or threat of serious bodily injury to another person under Code of Criminal Procedure article 46.03 section 4(d). It also orders Campbell, among other things, to "not have any personal contact, personal relationships, intimate or physical relationships with any females."

Campbell appealed. While the appeal was pending, Campbell was transferred to Kerrville State Hospital. In response to a letter from that hospital seeking clarification of the June 2, 2000, order, the trial court on January 9, 2001, filed an "addendum to previous order of commitment." According to Campbell, the addendum was rendered without notice or a hearing. The addendum, among other things, orders the staff and treatment providers at Rusk or Kerrville State Hospital to prohibit Campbell from making telephone calls to fe-

males except his mother, receiving visits from females except his mother, going on smoke breaks in the presence of females, and taking his meals at a table where a female is sitting.

On January 23, 2001, the trial court amended the addendum, again without notice or a hearing. The amendment prohibits staff and treatment providers at Rusk or Kerrville State Hospital from allowing Campbell "to have any inappropriate personal contact with any persons." Campbell challenged the addendum and its amendment in supplemental briefing before the court of appeals.

The court of appeals, with one justice concurring in part and dissenting in part, affirmed the trial court's June 2, 2000, order.[6] The court of appeals held that having two medical certificates on file stating that Campbell met the criteria for continued inpatient treatment was not a jurisdictional prerequisite for conducting a hearing on whether Campbell should be released from his commitment.[7] The court of appeals also held, after reviewing all the evidence, that the trial court's order extending Campbell's inpatient treatment was based on factually sufficient evidence.[8] The court of appeals declined to consider the issues Campbell raised in his supplemental brief, concluding that Campbell had not raised those issues in the trial court, thereby waiving any error.[9] Although the court of appeals considered other issues raised by Campbell, they are not before us.

■ We granted Campbell's petition for review. We decide whether two medical certificates described in Mental Health Code sections 574.009 and 574.011 must be

6. 68 S.W.3d at 750, 764.

7. *Id.* at 757–58.

8. *Id.* at 758–59.

9. *Id.* at 750 n. 1.

on file before a trial court can conduct a hearing under Code of Criminal Procedure article 46.03 section 4(d)(5) to determine whether an individual acquitted of a violent crime by reason of insanity should be released from involuntary commitment in a state mental hospital. We agree with the court of appeals that this issue is not moot because the trial court rendered subsequent orders continuing Campbell's commitment.[10] We therefore turn to the parties' arguments on appeal.

## II

■ First, we consider whether we have jurisdiction in this case. The question is whether an appeal from a commitment order entered under Code of Criminal Procedure article 46.03 section 4(d)(5) is a civil matter over which we have jurisdiction or a criminal matter over which we lack jurisdiction.[11] Both parties assert that this is a civil matter, and the court of appeals, without discussing the issue, treated the appeal as such.

■ We agree. As was recently held in *In re G.D.*:

> [T]he procedure for making the determination of mental illness comes under the purview of the civil statutes. Involuntary mental health commitment proceedings are civil rather than criminal in nature.... Such a proceeding is a civil matter, notwithstanding the underlying criminal prosecution.[12]

In fact, we have previously considered article 46.03 section 4(d)(5). In *State v. Roland*,[13] we held, without discussing the jurisdictional issue, that neither due process nor article 46.03 section 4(d)(5) required

releasing a person committed following an acquittal by reason of insanity when the trial court did not hold a hearing before the commitment order expired. We accordingly conclude that this appeal involves a civil matter over which we have jurisdiction.

## III

Campbell argues that the trial court erred in overruling his objection to proceeding with his commitment hearing without two medical certificates being on file stating that he met Mental Health Code section 574.011's criteria for continued court-ordered mental health services. Campbell contends that, under section 574.009, absent two such certificates, the trial court had no authority to conduct the hearing.

The State concedes that when the hearing occurred, two medical certificates meeting section 574.011's criteria were not on file. Although three medical certificates were on file, only one stated that Campbell met the criteria for extended inpatient treatment. The State argues, however, that the trial court could nevertheless conduct a hearing under Code of Criminal Procedure article 46.03 section 4(d)(5) without any medical certificates.

We agree with the State. Article 46.03 section 4(d)(5) states, in relevant part:

> Judicial Release. A person acquitted by reason of insanity and committed to a mental hospital ... may only be discharged by order of the committing court in accordance with the procedures specified in this subsection. If at any time prior to the expiration of a commit-

---

**10.** *See id.* at 753–54.

**11.** TEXAS CONST. art. V, § 3(a).

**12.** 10 S.W.3d 419, 422 (Tex.App.-Waco 2000, no pet.) (citations omitted); *accord In re*

*G.B.R.*, 953 S.W.2d 391, 395 (Tex.App.-El Paso 1997, no pet.).

**13.** 973 S.W.2d 665, 666 (Tex.1998).

ment order the superintendent of the facility to which the acquitted person is committed determines that the person has recovered from his mental condition to such an extent that he no longer meets the criteria for involuntary commitment ..., the director of the facility shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. If the superintendent of the facility intends to recommend release, out-patient care, or continued in-patient care upon the expiration of a commitment order, the superintendent shall file a certificate to that effect with the clerk of the court that ordered the commitment at least 14 days prior to the expiration of that order.... Upon receipt of such certificate or upon the expiration of a commitment order, the court shall order the discharge of the acquitted person or on the motion of the district or county attorney or on its own motion shall hold a hearing, prior to the expiration of the commitment order, conducted pursuant to the provisions of the Mental Health Code ... to determine if the acquitted person continues to meet the criteria for involuntary commitment.... [14]

The proceedings described in article 46.03 section 4(d)(5) determine whether a person should be released from involuntary commitment. They apply to a person who has been "found not guilty by reason of insanity in the trial of a criminal offense and the court determines that the [person] committed an act, attempt, or threat of serious bodily injury to another person." [15] Moreover, the trial court must have re-

tained jurisdiction over that person to conduct those proceedings. [16]

Campbell's case meets these requirements. Thus, once Rusk State Hospital's superintendent filed a letter and certificate stating that Campbell should be released from his involuntary commitment, article 46.03 section 4(d)(5) applied to determine whether that would, in fact, occur.

Under article 46.03 section 4(d)(5)'s plain terms, the trial court, upon receiving the superintendent's letter and certificate, had two options. It was required to either discharge Campbell or hold a hearing on whether Campbell should be released from his commitment. [17] The trial court chose the latter option and conducted a hearing. The parties dispute whether the trial court conducted that hearing on its own motion or on the State's application for court-ordered mental health services, and the record is unclear on this point. But this dispute is immaterial, because the dispositive fact is that the trial court conducted a hearing on whether Campbell should be released instead of discharging him summarily.

Under article 46.03 section 4(d)(5), that hearing was required to be "conducted pursuant to the provisions of the Mental Health Code." [18] But article 46.03 section 4(d)(5) does not specify what code provisions apply to such a hearing. While Mental Health Code chapter 574 governs court-ordered mental health services generally, it contains a broad range of provisions. Chapter 574 covers topics such as temporary mental health services and commitment at a federal facility. [19] No one contends that these provisions apply here.

---

14. TEX.CODE CRIM. PROC. art. 46.03, § 4(d)(5).

15. *Id.* § 4(d)(1).

16. *Id.*

17. *Id.* § 4(d)(5).

18. *Id.*

19. TEX. HEALTH & SAFETY CODE §§ 574.034, 574.043.

Thus, not all Mental Health Code provisions apply to every article 46.03 section 4(d)(5) proceeding. Accordingly, we conclude that only those Mental Health Code provisions pertinent to an article 46.03 section 4(d)(5) proceeding apply.

The issue we are faced with today arises because Mental Health Code section 574.009 requires that there be filed two medical certificates for mental illness completed by different physicians before the trial court can conduct a commitment hearing.[20] Section 574.009 also provides that if the certificates are not on file when the hearing occurs, the judge shall dismiss the application and immediately release the proposed patient.[21]

Section 574.011 requires the medical certificates to include the examining physician's opinion that:

(A) the examined person is mentally ill; and

(B) as a result of that illness the examined person is likely to cause serious harm to himself or to others or is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) not able to make a rational and informed decision as to whether to submit to treatment.[22]

Thus, we must decide whether sections 574.009 and 574.011 are pertinent to proceedings brought under article 46.03 section 4(d)(5).

The few courts of appeals that have considered this issue have reached inconsistent conclusions. In *Lopez v. State*,[23] the court held, without analysis, that if article 46.03 governs a commitment action, the State is not required to comply at all with the Mental Health Code's provisions. In *Weller v. State*,[24] the court rejected the *Lopez* court's conclusion and held that filing adequate medical certificates was a prerequisite to holding a hearing, even if that hearing occurred under article 46.03 section 4(d)(5). The *Weller* court based its decision on article 46.03 section 4(d)(5)'s statement that a hearing must be "conducted pursuant to the provisions of the Mental Health Code."[25] And, here, the court of appeals concluded that article 46.03 section 4(d)(5) authorizes the trial court to conduct a hearing regardless of whether two medical certificates are on file, but the hearing is conducted according to the pertinent Mental Health Code provisions.[26]

In deciding which approach is correct, we start with article 46.03 section 4(d)(5)'s own language. Article 46.03 section 4(d)(5) states that, on the county or district attorney's motion or on the court's own motion, the trial court "shall hold a hearing" to determine whether the person should be released from his or her involuntary commitment.[27] Thus, article 46.03

20. *Id.* § 574.009(a).

21. *Id.* § 574.009(d).

22. *Id.* § 574.011(a)(7).

23. 775 S.W.2d 857, 860 (Tex.App.-San Antonio 1989, no writ).

24. 938 S.W.2d 787, 788–89 (Tex.App.-Beaumont 1997, no writ).

25. *Id.* at 789.

26. 68 S.W.3d at 756–57.

27. Tex.Code Crim. Proc. 46.03, § 4(d)(5).

section 4(d)(5) makes a hearing mandatory at the trial court's request or at the county or district attorney's request. And that hearing must be "conducted pursuant to the provisions of the Mental Health Code."[28] As the court of appeals recognized, that phrase relates to "the *conduct* of the hearing, not whether one can be held."[29]

■ Therefore, we conclude that a hearing held under article 46.03 section 4(d)(5) must comply with those Mental Health Code provisions pertinent to *conducting* commitment hearings. The medical certificate requirement in sections 574.009 and 574.011 is not a prerequisite to conducting the hearing that article 46.03 section 4(d)(5) requires be held. Instead, sections 574.009 and 574.011 apply to proceedings for court-ordered mental health services brought under Mental Health Code section 574.001. Section 574.001 provides generally that "[a] county or district attorney or other adult may file a sworn written application for court-ordered mental health services."[30] Requiring two medical certificates to be on file in section 574.001 proceedings makes sense because those proceedings involve different concerns and apply to a different class of individuals than do article 46.03 section 4(d)(5) proceedings.

As we have discussed, article 46.03 section 4(d)(5) applies only to those persons acquitted of a violent crime by reason of insanity who have been previously committed to a state mental hospital or other appropriate facility. Proceedings under article 46.03 section 4(d)(5) are brought to determine whether those persons should be released from their commitment. In contrast, Mental Health Code section 574.001 applies to individuals who have not had the added protections that accompany a proceeding that resulted in an acquittal on the merits because of insanity. As the court of appeals noted:

[S]tricter provisions accompany an application for involuntary commitment or recommitment under the [Mental Health Code] than a recommitment under the Code of Criminal Procedure. This seems to further a rather obvious public policy: a higher level of proof is required to even initiate a commitment proceeding against a person who has not already been adjudicated violently insane.[31]

We therefore conclude that the court of appeals properly held that article 46.03 section 4(d)(5) "authorized Campbell's hearing, while the Mental Health Code set out the procedures that must have been followed in the conduct of that hearing."[32] We hold that the medical certificates described in sections 574.009 and 574.011 were not required to be on file before the trial court conducted Campbell's hearing under article 46.03 section 4(d)(5). We disapprove of *Lopez* and *Weller* to the extent they are inconsistent with this holding.

## IV

### A

■ Campbell next contends that the evidence was both legally and factually insufficient to support the June 2, 2000, commitment order. Campbell asserts that the State never made a showing by clear and convincing evidence that continued in-

28. *Id.*

29. 68 S.W.3d at 757.

30. Tex. Health & Safety Code § 574.001(a).

31. 68 S.W.3d at 758 n. 4.

32. *Id.* at 758 n. 5.

patient treatment was necessary to protect him or others. The State responds that Campbell did not challenge the legal sufficiency of the evidence in the court of appeals. Moreover, the State asserts that in his brief before this Court, Campbell does not mention the standard for reviewing the legal sufficiency of the evidence. Thus, the State contends that the issue is not properly before us. The State also asserts that this Court lacks jurisdiction to review the court of appeals' evaluation of the factual sufficiency of the evidence.

We agree that Campbell's challenges to the sufficiency of the evidence are not properly before us. Campbell's briefing in the court of appeals did not challenge the evidence's legal sufficiency. And Campbell's briefs in this Court contain a heading stating that the evidence is legally insufficient. But the briefs do not discuss what the standard is for challenging the legal sufficiency of the evidence or why the evidence does not, as a matter of law, support the trial court's June 2, 2000, order. Instead, the briefs focus on the evidence's alleged factual insufficiency. Absent adequate briefing and argument concerning the legal sufficiency of the evidence, we do not consider this issue.[33]

Moreover, we do not have jurisdiction to review the factual sufficiency of the evidence. As we noted in *Coulson v. Lake LBJ Municipal Utility District*,[34] "the task of weighing all the evidence and determining its sufficiency is a power confined exclusively to the court of appeals." Therefore, Campbell's evidentiary arguments are not properly before us.[35]

The State contends that one issue not raised by Campbell but arguably included by him as a subsidiary point is whether the court of appeals applied the correct standard in conducting its factual sufficiency review. Campbell has not raised this issue in his brief, and the State is not seeking relief from the trial court's order on this issue. Therefore, we decline to consider it.

**B**

■ Campbell also argues that the court of appeals erred in not ruling on the issues raised in his supplemental brief. In that brief, Campbell challenged the trial court's authority to sign the addendum to the June 2, 2000, commitment order and the amendment to the addendum. Campbell complained that the trial court's addendum and amendment prohibited Campbell from engaging in certain activities. According to Campbell, the addendum and amendment dictate punishment and treatment, which he contends the trial court is constitutionally and statutorily forbidden from doing.

The State asserts that Campbell did not preserve error on those issues, because he never brought his complaints to the trial court's attention. We agree.

The trial court entered the addendum and amendment on January 9 and 23, 2001, respectively. On January 24, 2001, Campbell filed his request in the court of appeals to file a supplemental brief considering those two new orders. Thus, Campbell was aware of the orders and immediately moved to file supplemental briefing in the court of appeals. But Campbell never raised his concerns about the addendum and amendment with the trial court,

---

**33.** *See, e.g., Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983); *Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 452–53 (Tex. 1978).

**34.** 781 S.W.2d 594, 597 (Tex.1989).

**35.** *See* TEX. CONST. art. V, § 6(a); *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 648 (Tex.1988).

as our rules of appellate procedure require.[36]

Campbell asserts that he preserved error about the addendum and amendment, because his counsel previously objected at the hearing that resulted in the June 2, 2000, commitment order that "the statute prohibits you [the trial court] to compel him [Campbell] to engage in some of the things that you have suggested." But Campbell cannot piggy-back his objection to the June 2, 2000, order onto the subsequent addendum.

Additionally, we held in *McDaniel v. Yarbrough*[37] that "[a]n objection is sufficient to preserve error for appeal if it allows the trial judge to make an informed ruling and the other party to remedy the defect, if he can." Campbell's statement that an unidentified statute prohibited the trial court from compelling Campbell to engage in certain unidentified "things" was inadequate to inform the trial court of the precise objection. Thus, the objection was insufficient to preserve error for appellate review. Accordingly, we conclude that the court of appeals properly refused to consider the issues Campbell raised in his supplemental brief.

## V

We hold that the court of appeals properly affirmed the trial court's June 2, 2000, order continuing Campbell's commitment. As the court of appeals correctly recognized, a commitment hearing under article 46.03 section 4(d)(5) may proceed without two medical certificates described in Mental Health Code sections 574.009 and 574.011. In addition, we decline to consider Campbell's legal sufficiency challenge to the evidence based on the state of the briefing, and we have no jurisdiction to consider his factual sufficiency challenge.

Moreover, the court of appeals properly concluded that Campbell failed to preserve for appellate review the issues he raised in supplemental briefing. Consequently, we do not consider those issues. We accordingly affirm the court of appeals' judgment.

---

**36.** Tex.R.App. P. 33.1(a).

**37.** 898 S.W.2d 251, 252 (Tex.1995).