

# NUMBER 13-22-00179-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN RE ARNOLD RAUL GONZALES

---

**On appeal from the 377th District Court
of Victoria County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva
Memorandum Opinion by Justice Benavides**

By a single issue, appellant Arnold Raul Gonzales argues that the evidence is insufficient to support the trial court's order denying outpatient treatment and supervision and recommitting him to an inpatient mental health treatment facility. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.261. We affirm.

### I.    BACKGROUND[1]

On July 28, 2021, the trial court found Gonzales not guilty by reason of insanity

---

[1] The underlying facts concerning the crime for which Gonzales was acquitted were discussed in

and ordered an initial temporary commitment for a period not to exceed thirty days and a mental health evaluation. *See id.* arts. 46C.251, 46C.252. On August 26, 2021, Gonzales was admitted to San Antonio State Hospital (the Hospital) for the temporary commitment and evaluation period. On October 20, 2021, the trial court signed an amended order denying outpatient treatment and extending Gonzales's inpatient treatment for a period of 180 days. *See id.* art. 46C.256.

On March 17, 2022, the State filed a motion for recommitment under article 46C.261, citing concerns "for the protection of society or the community, the violent nature of the acquitted person's offense, . . . and the absence of a safe or practical plan for discharge." *See id.* art. 46C.261(b). On March 23, 2022, "a certificate of medical examination for outpatient treatment," a dangerousness risk assessment, and an outpatient treatment plan created by the Hospital was filed. The Hospital represented that Gonzales's "treatment team recommends [he] be ordered to receive outpatient treatment under the supervision of the Gulf Bend Center."

The outpatient management plan created by the Hospital recommended "[r]egular appointments with a psychiatrist (at least monthly for the foreseeable future) for ongoing psychiatric assessment, medication monitoring[,] and any clinically indicated medication adjustments/changes as necessary." The plan also recommended Gonzales receive "intensive case management until [he is] well-established with his treatment providers and fully engaged in community programming with specifically identified daily routines."

---

a previous memorandum opinion. *See In re Gonzales*, No. 13-21-00357-CV, 2022 WL 400833, at *1–4 (Tex. App.—Corpus Christi–Edinburg Feb. 10, 2022, no pet.) (mem. op.).

The trial court held a hearing on the State's motion on April 6, 2022. Cory Walleck, a supervisor at Gulf Bend, testified at the hearing. According to Walleck, Gulf Bend is "[n]ot fully" equipped to provide services to Gonzales. Specifically, Gulf Bend "can offer . . . mental health services, but [it] do[es no]t do any kind of supervisory services." It also lacks "enforcement mechanisms" to ensure patients are "complying with treatment or medication dosage."

Dr. Heather Holder, a forensic psychologist, testified that Gonzales has continued to make progress "and has indicated his commitment to maintaining sobriety and recovery." According to Dr. Holder, Gonzales "was the victim of an outburst by one of [the Hospital's] other patients, and he did not retaliate."[2] However, Dr. Holder had not had a chance to review the outpatient management plan and did not express an opinion about it.

In closing, citing to article 46C.263, counsel for Gonzales requested that the trial court order that supervision of Gonzales "be provided by the appropriate community supervision and corrections department," instead of Gulf Bend. *See id.* art. 46C.263(d).

After a recess, the trial court stated:

All right. The Court has discussed some of the concerns that the Court had with regards to ordering the [Community Supervision and Corrections Department (CSCD)] to supervise this individual. After speaking to the director there at the [CSCD], the director informed the Court that there is no psychiatrist or psychologist that is employed by the [CSCD] here. There [are] no security personnel that would be trained to be able to deal with an individual who has—who may have a mental episode. They also have

---

[2] The certificate of medical examination for outpatient treatment contained in the record details that on or about February 26, 2022, a "peer hit [Gonzales] on his back unprovoked."

3

limited resources with regards to training and education on how to treat an individual who has been declared not guilty by reason of insanity.

Therefore, the Court's concerns are still the same. The primary concern of the placement of an individual on an outpatient treatment basis is whether it can be safely and effectively provided. At this time[,] the Court still cannot find by a preponderance of the evidence that treatment and supervision can be done safely and effectively on an outpatient basis or community[-]based treatment supervision for the acquitted person, [Gonzales].

Neither party objected to the trial court basing its decision in part on the statements of a witness, the director of the CSCD, who was not subject to cross-examination.

The trial court signed an order denying outpatient treatment and supervision and recommitting Gonzales to the Hospital for a period of one year. The trial court's order contains the following recital:

After a hearing held on April 6, 2022, considering the "primary concern" as the protection of society, the Court cannot find by a preponderance of the evidence that treatment and supervision can be safely and effectively provided as outpatient or community-based treatment and supervision for the acquitted person . . . . The Court does not find that Gulf Bend is willing and able to supervise the acquitted person based on the testimony presented. In addition, the Court cannot find by a preponderance of the evidence that the [CSCD] has the resources to supervise the acquitted person even if Gulf Bend would provide mental health services. Specifically, the CSCD has no psychiatrist or psychologist on staff to assist with a specialized case[ ]load such as that of the acquitted person. In addition, the CSCD does not have specially trained personnel that would be able to assist with the supervision of the acquitted person during visits with the acquitted person.

The CSCD has limited resources with regard to training and education on how to treat an individual who has been declared not guilty by reason of insanity.

Based on the evidence presented, the Court finds by a clear and

4

convincing standard that continued mandatory supervision and treatment is appropriate. Therefore, the Court orders continued inpatient commitment for not more than one year.

This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By a single issue, Gonzales argues the evidence was legally and factually insufficient to support the trial court's amended inpatient commitment order.

### A. Standard of Review

Commitment proceedings for persons found not guilty by reason of insanity are civil in nature. *Campbell v. State*, 85 S.W.3d 176, 180 (Tex. 2002). The burden of proof in commitment proceedings following a finding of not guilty by reason of insanity is heightened to a clear-and-convincing standard. *Truong v. State*, 574 S.W.3d 511, 519 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

Under a heightened factual sufficiency review, we consider all the evidence, both in support of and contrary to the trial court's findings, and we give "due consideration to evidence that the factfinder reasonably could have found to be clear and convincing." *House v. State*, 261 S.W.3d 244, 247 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). The ultimate inquiry in a factual sufficiency review is whether a reasonable factfinder could have resolved disputed evidence in favor of the finding. *Id.* We must avoid supplanting our own judgment in place of the factfinder's. *Id.* Under a legal sufficiency review, "we must consider all of the evidence in the light most favorable to the finding to determine whether a reasonable

factfinder could have formed a firm belief or conviction as to the truth of the allegations sought to be established." *Truong*, 574 S.W.3d at 519.

**B.      Applicable Law**

Chapter 46C of the Texas Code of Criminal Procedure governs the raising of an insanity defense, the determination of a defendant's sanity, and the disposition of an acquitted person following a finding of not guilty by reason of insanity. *See* TEX. CODE CRIM. PROC. ANN. arts. 46C.001–.270. When an acquitted person is found not guilty by reason of insanity, the trial court shall determine whether the charged offense included conduct that: "(1) caused serious bodily injury to another person; (2) placed another person in imminent danger of serious bodily injury; or (3) consisted of a threat of serious bodily injury to another person through the use of a deadly weapon." *Id.* art. 46C.157.

In cases where the trial court makes a finding that the offense involved dangerous conduct, the court generally maintains jurisdiction over the individual until "the cumulative total period of institutionalization and outpatient or community-based treatment and supervision under the court's jurisdiction equals the maximum term provided by law for the offense of which the person was acquitted by reason of insanity and the court's jurisdiction is automatically terminated." *Id.* art. 46C.158(2). "A court that orders an acquitted person committed to inpatient treatment or orders outpatient or community-based treatment and supervision annually shall determine whether to renew the order." *Id.* art. 46C.261(a). "A court shall renew the order only if the court finds that the party who requested the renewal has established by clear and convincing evidence that continued

6

mandatory supervision and treatment are appropriate." *Id.* art. 46C.261(h).

> The court shall order the acquitted person committed to a mental hospital or other appropriate facility for inpatient treatment or residential care if the state establishes by clear and convincing evidence that:
>
> (1)     the person has a severe mental illness or mental retardation;
>
> (2)     the person, as a result of that mental illness or mental retardation, is likely to cause serious bodily injury to another if the person is not provided with treatment and supervision; and
>
> (3)     inpatient treatment or residential care is necessary to protect the safety of others.

*Id.* art. 46C.256(a). In determining whether the State has met its burden to show that inpatient treatment or residential care is necessary, the trial court shall consider whether "an adequate regimen of outpatient or community-based treatment will be available to the person" and whether "the person will follow that regimen." *Id.* art. 46C.256(b); *see id.* art. 46C.254.

A court may only order an acquitted person to participate in outpatient treatment if "the court receives and approves an outpatient or community-based treatment plan that comprehensively provides for the outpatient or community-based treatment and supervision" and "the court finds that the outpatient or community-based treatment and supervision provided for by the plan will be available to and provided to the acquitted person." *Id.* art. 46C.263(b). "In determining whether an acquitted person should be ordered to receive outpatient or community-based treatment and supervision rather than inpatient care or residential treatment, the court shall have as its primary concern the protection of society." *Id.* art. 46C.263(g).

7

**C.** **Analysis**

The parties do not dispute that Gonzales has a severe mental illness and that because of his mental illness, he is likely to cause serious bodily injury to another if he is not provided with treatment and supervision. *See id.* art. 46C.256(a)(1)–(2). Gonzales merely contends that the State failed to prove by clear and convincing evidence that "inpatient treatment or residential care is necessary to protect the safety of others." *See id.* art. 46C.256(a)(3).[3]

"The court may order that supervision of the acquitted person be provided by the appropriate community supervision and corrections department or the facility administrator of a community center that provides mental health or mental retardation services." *Id.* art 46C.263(d). Gonzales does not complain on appeal that the trial court erred by stating on the record its account of unconfronted hearsay or by determining the local CSCD did not have the ability to supervise his outpatient care based on that account.

Further, Gonzales's treatment team recommended "[Gonzales] be ordered to

---

[3] Gonzales also argues that the State did not prove that he had the inability to function and cites to the Texas Mental Health Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(e). However, he does not cite to any authority to support the implication that this requirement applies to chapter 46C proceedings. *See* TEX. R. APP. P. 38.1(i). By its plain language, the statute Gonzales cites to applies to patients who "received court-ordered inpatient mental health services under [the Texas Mental Health Code] or under Chapter 46B, Code of Criminal Procedure." *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a)(4). Recommitment proceedings for individuals found not guilty by reason of insanity are governed by chapter 46C of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.261; *Truong v. State*, 574 S.W.3d 511, 519 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see also Campbell v. State*, 68 S.W.3d 747, 758 n.4 (Tex. App.—Houston [14th Dist.] 2001) ("[S]tricter provisions accompany an application for involuntary commitment or recommitment under the Health and Safety Code than a recommitment under the Code of Criminal Procedure. This seems to further a rather obvious public policy: a higher level of proof is required to even initiate a commitment proceeding against a person who has not already been adjudicated violently insane."), *aff'd*, 85 S.W.3d 176 (Tex. 2002). We therefore need not determine whether the State proved by clear and convincing evidence that Gonzales had an inability to function. *See* TEX. CODE CRIM. PROC. ANN. arts. 46C.254, 46C.261; TEX. R. APP. P. 47.1.

receive outpatient treatment under the supervision of the Gulf Bend Center," not under the supervision of the "appropriate community supervision and corrections department." *See id.* art. 46C.263(d)*.* The evidence indicated that Gonzales's mental illness and history of substance abuse required "[r]egular appointments with a psychiatrist (at least monthly for the foreseeable future) for ongoing psychiatric assessment, medication monitoring[,] and any clinically indicated medication adjustments/changes as necessary." Walleck testified that Gulf Bend would not be able to provide any "supervisory services" to Gonzales, that it lacked enforcement mechanisms, and that it does not operate as "a check" on a patient's compliance with medication.[4]

Because the trial court was required to consider whether a "regimen of outpatient or community-based treatment" would be available to Gonzales, and because Walleck testified that Gulf Bend could not provide the supervisory services recommended by Gonzales's treatment plan, we conclude that the State presented sufficient evidence to show that "inpatient treatment or residential care is necessary to protect the safety of others." *See id.* arts. 46C.254(2)(B), 46C.256(a), (b)(1); *Truong*, 574 S.W.3d at 524. We therefore overrule Gonzales's sole issue on appeal.[5]

---

[4] Gonzales cites to Gulf Bend's website for his contention that it is adequately equipped to provide services in this case. However, this information is not contained in the record, and "[w]e will not consider evidence that the trial court itself did not consider." *See Arredondo v. Rodriguez*, 198 S.W.3d 236, 239 n.1 (Tex. App.—San Antonio 2006, no pet.); *see also Educ. Serv. Ctr. Region 2 v. Global Spectrum, LP*, No. 13-21-00071-CV, 2022 WL 2348059, at *3 (Tex. App.—Corpus Christi–Edinburg June 30, 2022, no pet. h.) (mem. op.).

[5] However, we do express dismay that Gonzales, despite making significant strides towards rehabilitation, will continue to be committed at an in-patient facility where he has now reportedly been assaulted by another patient. But the concern that acquitted patients would have the Sisyphean task of credibly refuting a government-funded mental health center's claims that it is ill-equipped to treat and supervise such persons at recommitment hearings was apparently not persuasive to the Legislature. *See*

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
25th day of August, 2022.

---

House Research Org., Bill Analysis, Tex. S.B. 837, 79th Leg. R.S. (2005) (citing supporters of the bill as saying that it "would help protect the public by ensuring that inpatient care continued when necessary to prevent the release of a dangerous person, for example, or if community treatment were not available" and opponents of the bill as saying that "SB 837 could shift the focus of treatment for persons found not guilty by reason of insanity too much toward criminal justice and away from an emphasis on the mental health of acquitted persons"). We are mindful that our role is not to legislate, and we must therefore overrule Gonzales's sole issue.